## HAUGEN V. CHICAGO, M. & ST. P. RY. CO.

1. The qualifications of a juror, when challenged for cause, become a question of fact for the trial court.
2. The statute having prescribed the grounds for disqualification, when either of these grounds is found to exist, it is the duty of the trial court to reject the juror; but if, after a full examination of the juror personally, or by the testimony of other persons, the trial court finds that none of the statutory disqualifications exist, and accepts the juror, its decision will not be reversed, unless it is made to appear that there was no legal evidence to support its judgment.
3. The word "bias," as used in subdivisions 6, 7, § 5040, Comp. Laws, in reference to the disqualification of a juror to sit in a case, means such a leaning of the mind or propensity towards an object as does not leave

the mind indifferent, but shows that it is under an influence which sways it to one side, and will tend to prevent the juror from deciding the case according to the evidence.

4. An unqualified opinion or belief as to the merits of the action, founded upon knowledge of the material facts or some of them, disqualifies a person from sitting as a juror. This is the language of the Code. Subdivision 6, § 5040, Comp. Laws.

5. The theory of the law is that a juror who has formed an opinion cannot be impartial, but every opinion he may entertain need not necessarily have that effect. The opinion, to disqualify, must be an abiding bias of the mind, based upon the substantial facts in the case, in the existence of which he believes.

6. An unqualified opinion or belief, as used in the Code, is such a settled conviction in the mind of the juror, founded upon a knowledge of the facts of the case, as would raise a strong presumption of partiality; but a hypothetical opinion, founded on hearsay or information, and unaccompanied with malice or ill will, will not support a challenge for bias.

7. In determining the impartiality of a juror, the trial judge is clothed with large discretion, and his finding is not to be determined by any inflexible rules. Much must depend upon the character of the juror as disclosed by his bearing, and upon his relation to the parties. The standard is a man who will act with entire impartiality as a juror in a given case. From the surroundings the trial judge must determine, and from that judgment there is no appeal if it is not exercised in an arbitrary manner, but is a fair, legal judgment, deduced from the facts as they are presented.

8. A juror swore that he had formed an opinion, but it was based upon conversations had with persons who knew nothing about any of the facts in the case. The conversations were general current talk. Notwithstanding his opinion, based, as it was, he could and would sit as a juror in the case, unprejudiced and unbiased, and render a verdict according to law and evidence. *Held,* the trial court committed no error in permitting the juror to sit on the panel.

9. In an action against a railroad company for damages caused by fire, when the complaint alleges negligence in managing an engine, whereby combustiles on its right of way and lands adjacent were set on fire, from which the fire, without any negligence of the plaintiff, spread to plaintiff's lands, and plaintiff's property was destroyed, it is not necessary to aver negligence of the defendant in permitting the fire to escape from its right of way.

10. A complaint alleging that the defendant company so carelessly and negligently managing its engine and train as to set fire to dry grass on land adjoining its right of way, which, without negligence on plaintiff's part, spread and caused the damage complained of, charges actionable negligence against the company.

11. When errors in the admission or rejection of testimony could in no way have affected the result, they are not grounds for reversal.

12. A trial court will direct a verdict only when there is a total absence of evidence upon some essential issue, or where there is no conflict, and the evidence is susceptible of only one construction.

(Syllabus by the Court. Opinion filed Dec. 8, 1892.)

Appeal from circuit court, Turner county. Hon. E. G. SMITH, Judge.

Action against the defendant railroad company for causing the destruction of plaintiff's property by fire. Judgment for plaintiff. Defendant appeals. Affirmed. The facts are stated in the opinion.

*Winsor & Kittredge* and *E. C. Kennedy*, for appellant.

Where a juror is shown to have feeling for or against a certain party he should not be permitted to sit in judgment upon that party. Section 5040, Comp. Laws; Thomp. Trials, 65. Where fire is set by a railroad upon the right-of-way and spreads therefrom, doing damage, plaintiff should allege and prove that defendant negligently permitted the fire to spread from its right of way. Railroad v. Ehlert, 11 Am. & Eng. R. Cases, 61.

*Palmer & Rogde*, for respondent.

The allowing of combustibles upon the right-of-way by railroads, and in such close proximity to the tracks that fire would easily be set from the engine, is negligence *per se*. Wharton, Neg. §§ 78, 873; Flynn v. San Francisco, 40 Cal. 14; *Id.* v. Railway, 50 Cal. 176; Bass v. Railroad, 28 Ill. 16; Mills v. Railroad, 42 Ill. 407; Ohio & M. v. Shamfelt, 47 Ill. 497; Illinois Central v. Frazer, 47 Ill. 505; *Id.* v. Mann. 51 Ill. 78; Ring v. Hannibal, 70 Mo. 252; Poffas v. Railroad, 67 Mo. 715; Diamond v. Railroad, 13 Pac. 367; Salmon v. Railroad, 38 N. J. L. 15; Clarke v. Railroad, 23 N. W. 536; Kellogg v. Railroad, 26 Wis. 223; Erd v. *Id.* 4 Wis. 65; Pierce on Railroads, 434; 1 Thomp. Neg. 162; Railroad v. Westover, 4 Neb. 268; White v. Railroad, 1 S. D. 326; Kelsey v. Railroad, 1 S. D. 80; Grain v. Railroad, 46 N. W. 972.

BENNETT, P. J. This is an action brought by the plaintiff based upon the charge that the defendant negligently and carelessly permitted combustibles to accumulate upon its right of way

and roadbed; that sparks from its engine ignited this material, and that this fire was communicated to plaintiff's property, and destroyed it; whereby he was damaged to the extent of $1,476. The answer of defendant, except as to some formal matters, was a general denial. Upon the trial a verdict was rendered in favor of plaintiff, and damages assessed at the sum of $978.90, and judgment rendered for the amount. From this judgment the appeal is taken.

The first and second assignments of error are that the court below erred in permitting Jurors Sterling and Lahey to remain on the panel after being challenged for cause. We will proceed to the consideration of the objections to these jurors, to ascertain if the rights of the defendant were in any way impaired or violated by the action of the court in refusing to reject them from the panel. Juror Sterling was examined by counsel for the defendant when he was called as a juror, as follows: "Question. Mr. Sterling, you say you have an unadjusted claim for damages against the defendant company; have you now? Answer. I have, for those cattle that were run over. Q. You have put in a claim against the company for those cattle, and it has not been paid? A. I did put in a claim. Examined by plaintiff: Q. Mr. Sterling, I will ask you whether or not the fact that you have a claim against the company, the claim being unadjusted, would be a bias or prejudice against the defendant in this action or any other action? A. I don't think it would. Q. Notwithstanding that fact, you can hear this case without bias or prejudice, and render a verdict according to law and evidence, and will you do so? A. I would. By the Court: Q. The claim which you have referred to against the defendant is not a claim arising out of any transaction set forth in the complaint in this action? A. No, sir. Q. It has no connection whatever with the matters involved in this suit? A. Not that I am aware of; no." The challenge for cause was overruled. When the juror Lahey was called he was examined by counsel for defendant, as follows: "Question. Mr. Lahey, from your conversation relating to the fire you formed an opinion, did you not? Answer. Yes, sir. Q. You still have the same opinion that you then formed? A. Yes, sir. Q. And it would re-

quire the evidence of witnesses to change that opinion, would it? A. Yes, sir." The defendant then challenged the juror for cause. He was then examined by plaintiff: "Question. Will you state whether or not you ever had any conversation with the plaintiff in regard to this fire? Answer. No, sir. Q. Did you have any conversation with any one who claimed to know the facts of the case? A. I did not. Q. The opinion you formed is from what you have heard,—general, current talk? A. Yes, sir; that is all. Q. From parties you have seen, or have you read of it in the papers? A. I have not seen anything in the papers. What I heard was what Miles McLaughlin told. · Q. A general description of the fire and what he saw? A. That is all I know about it. Q. Notwithstanding the opinion you formed, could you and would you sit as a juryman in this case, unprejudiced and unbiased, and render a verdict according to the evidence and the law in this case? A. Yes, sir. By defendant: Q. This Miles McLaughlin you had the conversation with; was he burned out at the same time? A. The same day, I understand. I was not at home at that time. By the Court: Q. Mr. Lahey, from your conversation with the party named there, Miles McLaughlin, did you form any opinion as to the question of liability of the defendant in this case, on account of that fire? A. No, sir. Q. Have you any opinion now as to whether the plaintiff ought to recover, or whether the defendant is liable or not? A. No, sir; I don't know anything about that case. I don't know where this fire was set. Q. You have no opinion as to that? A. As to which of them was liable for the damage done? Q. Have you any opinion as to whether the defendant is or is not liable,—not what it may be, but whether you have any such opinion? A. No, sir; I don't, because I don't know the circumstances. Q. Did this party with whom you talked tell you how the fire originated? A. He didn't know, because he was eight or nine miles from the railroad track at this time. He was up in the country teaching school. Q. He didn't pretend to know the circumstances out of which the fire originated? A. No, sir." Challenge overruled. This presents all there is in the record which can be considered as touching the challenges of these two jurors by the defendant for cause.

The challenge of Juror Sterling raises the question of bias or prejudice; that of Juror Lahey the question of having formed an opinion from what he had heard by current talk in the vicinity where the fire which caused the damage occurred. Among the causes for challenge prescribed by our Code is that the proposed juror has "an unqualified opinion or belief as to the merits of the action, founded upon knowledge of its material facts or some of them," or that there is "the existence of a state of mind in the juror evincing enmity or bias to or against either party." Subdivisions 6, 7, § 5040, Comp. Laws. A juror's qualification, when challenged for cause, becomes a question of fact for the trial court. The statute having prescribed the grounds for disqualification, when either of these grounds is found to exist, the trial court will reject the juror; but, if after a full examination of the juror personally, or by the testimony of other persons, the trial court finds upon the question, its decision will not be reversed unless it is made to appear that there was no legal evidence to support the judgment of the court below upon that issue.

1. As to the bias or prejudice of the juror Sterling as shown by the record. A bias in favor of either party is as much a cause of challenge as a prejudice against either would be. Anderson, in his Law Dictionary, says bias "in a juror is being under an influence which so sways his mind to one side as to prevent his deciding the cause according to the evidence." Webster defines the word "bias" to be "a leaning of the mind; propensity towards an object, not leaving the mind indifferent; inclination; prepossession; bent." These definitions are applicable to the word as used in the above-quoted subdivisions of our Code. Having these definitions in view, did the trial judge err in holding that the juror Sterling was unbiased against the defendant? We think not. The statements of Sterling clearly evince that there was no enmity or bias or prejudice against the defendant. Although he had an unadjusted claim against the defendant for cattle that he claimed had been killed by it, yet that fact would not prejudice his mind so as to prevent his rendering a verdict according to the law and evidence, and he said he would do so.

2. The challenge of the juror Lahey was upon the ground that he had formed an opinion in the case. The general rule unquestionably is that if the proposed juror has formed and expressed, or has formed without having expressed, an opinion on the issues to be tried, he is, as a matter of law, disqualified, unless it appears that he can find an impartial verdict on the evidence without being influenced by the opinion. In the case of Reynolds v. U. S., 98 U. S. 145, where a juror was accepted who swore that he "believed" he had formed an opinion which he had never expressed, but which he did not think would influence his verdict, Chief Justice WAITE, in delivering the opinion, said: "The theory of the law is that a juror who has formed an opinion cannot be impartial. Every opinion he may entertain need not necessarily have that effect. In these days of newspapers, enterprise, and universal education, every case of public interest is, almost as a matter of necessity, brought to the attention of all intelligent people. * * * It is clear, therefore, that the court will practically be called upon to determine whether the nature and strength of the opinion formed is such as in law necessarily raises the presumption of partiality." In State v. Meaker, 54 Vt. 112, Ross, J., says: "The opinion, to disqualify, must be an abiding bias of the mind, based upon the substantial facts in the case in the existence of which he believes." To the same effect is State v. Meyer, 58 Vt. 457, 3 Atl. Rep. 195. Such is the result of the decisions of the great majority of the cases in the courts of last resort in the states of the Union, and the rule, as stated above, is generally prevalent. See People v. Cochran, 61 Cal. 548; Dolan v. State, 40 Ark. 454; O'Connor v. State, 9 Fla. 215; State v. Smith, 49 Conn. 376; The Anarchists' Case, 123 U. S. 131, 8 Sup. Ct. Rep. 21; State v. Ormiston, 66 Iowa, 143, 23 N. W. Rep. 370; Murphy v. State, 15 Neb. 383, 19 N. W. Rep. 489; McHugh v. State, 42 Ohio St. 154; Scranton v. Stewart, 52 Ind. 68.

It will be noted that the wording of the Code is "having an unqualified opinion or belief." An unqualified opinion is such a settled conviction in the mind of the juror, founded upon a knowledge of the facts of the case, as would raise a strong presumption of partiality; but a hypothetical opinion, founded on hearsay or infor-

mation, and unaccompanied with malice or ill will, will not support a challenge for implied bias. There is a wide distinction between a fixed opinion, formed after hearing what purported to be the facts, and a mere impression, formed upon rumor or hearsay evidence. If a juror has read or heard a statement of facts of a case, it does not of itself, under our statute, disqualify him. A mere suspicion or inclination of mind towards a conclusion is not enough; the opinion must be decided; a conclusion must have been reached. The effect upon his mind must be more than an impression. It must involve a belief in the facts and a conclusion from them. This is evidently the meaning of the statute when it would reject a juror having "an unqualified opinion or belief as to the merits of the action, founded upon knowledge of its material facts, or of some of them." In determining the impartiality of the juror, the trial judge is clothed with large discretion, and his finding is not to be absolutely determined by any inflexible rules. Much must depend upon the character of the juror as disclosed by his bearing, and upon his relations to the parties, and many other things impossible to specify. The standard is a man who will act with entire impartiality as a juror in the given case. From the surroundings the trial judge must determine, and from that judgment there is no appeal if it is not exercised in an arbitrary manner, but is a fair legal judgment upon the facts of the particular case as they are presented on the examination. Upon the examination of Juror Lahey he swore that he had formed an opinion from conversations he had, but these conversations were with no one who knew any of the facts in the case. They were merely "general, current talk," and that notwithstanding this fact he could and would sit as a juryman in the case, unprejudiced and unbiased, and render a verdict according to the evidence and the law. Under these circumstances, the trial court committed no error in overruling the challenges for cause.

Before the introduction of any evidence on the part of the plaintiff, the defendant objected to any testimony under the complaint, in reference to the fire starting on the right of way and spreading therefrom, for the reason that the complaint did not state that the defendant negligently permitted the fire to spread

26—S. D.

from the right of way. This objection is the basis for the third and fifth assignments of error, and is designed by appellant to raise the question, does permitting combustible material to accumulate on the track or right of way of a railroad company amount to negligence, irrespective of the question of negligently permitting a fire which might be ignited in the material to escape from its control and right of way? We think, however, this question is not fairly presented by the pleadings. There are no adjudicated cases upon the direct question of pleading, proposed and argued by appellant, which we have been able to find, except in Indiana, where the supreme court held in the case of Railroad Co. v. Hixon, 79 Ind. 111, that a complaint for injury to property consisting of growing grain and stacks of hay and straw, caused by fire from an engine igniting dry grass, weeds, rubbish, and other combustibles, negligently suffered to gather on the company's right of way and communicated to plaintiff's land "by the medium" of such combustibles, is insufficient without an allegation that the fire was permitted to escape upon the plaintiff's land by the fault and negligence of the company. In the cases of Railroad Co. v. Spenn, and Same v. Ehlert, 87 Ind. 322 and 339, the court held, Chief Justice Woods dissenting, that "a complaint is not good that fails to charge negligence in permitting the fire to escape from the right of way of the company."

The theory of these decisions is that there is a well-defined distinction between the negligent setting on fire of inflammable material on the right of way of a railroad company, and negligence in permitting such fire to escape onto the land of an adjacent proprietor. "This distinction," in the language of the court, "may sometimes appear to be a merely technical one, but it is founded upon the idea that every person, including bodies corporate, is permitted to use what belongs to him alone, in whatever way he may choose, so long as no one else is injured by the exercise of that right." The conclusion reached was that it was material that the complaint should aver that the railroad company had permitted the fire started on its right of way to escape onto the land of the plaintiff, upon the theory that negligence in so permitting the fire to escape constitutes the gist of the action. We think the

reasoning, theory, and conclusions of these cases are correct when the complaint fails to charge any other negligence than allowing an accumulation of dry weeds and other combustibles on the right of way, and then negligently setting it on fire. · Any person has an undoubted right to set on fire any rubbish or refuse materials which may be on his own premises, whether it be done negligently or not; but if the fire thus set is allowed to get beyond control, and it causes the destruction of another's property, the person who caused the fire is liable for the damage resulting from it. The complaint in the case at bar, however, is more general in its character than in the cases above cited It avers that "the defendant's locomotive * * * was so defectively constructed, so badly out of repair, and was so carelessly and negligently managed and operated by the defendant, that large quantities of sparks were emitted from its smokestack, and coals of fire were thrown and dropped from its furnace upon said railroad bed and right of way, as well as upon the ground adjacent and adjoining thereto, which ground was then and there covered with dry grass, weeds, and other combustibles and inflammable material. * * * upon said right of way and roadbed, as well as that upon the grounds adjacent were ignited and set on fire, and the fire thus set out by the negligence of the defendant communicated with and extended to plaintiff's property, and destroyed it." We think, upon a reasonable construction of the complaint, negligence is charged, not only in setting fire to the grass, etc., upon the right of way, but also to grass, etc., upon adjoining lands between the right of way and respondent's property. The allegation is "that defendant's locomotive * * * was so carelessly and negligently managed and operated by the defendant that large quantities of sparks were emitted from its smokestack, and coals of fire were thrown and dropped from its furnace upon said railroad bed and right of way, as well as upon ground adjacent and adjoining thereto, which ground was then and there covered with dry grass and other combustible and inflammable material, and the aforesaid accumulation of dry grass and combustible material upon said right of way and roadbed, as well that upon the ground adjacent thereto, was thereby ignited and set on fire; that the fire thus set out by the

negligence of the defendant communicated with and extended to plaintiff's property and destroyed it." This allegation shows that it was a continuous fire, and a reasonable intendment is that, if the fire was negligently set, it was negligently allowed to spread beyond the right of way of defendant. In the case of Railway Co. v. Hanmann, 87 Ind. 422, a similar complaint was held to be sufficient; but we think the better pleading in all such cases would be to aver "that the fire thus set was negligently allowed to spread beyond the right of way of the defendant," etc.

The next assignment of error is in relation to the admission of the testimony of J. P. Coffman. Upon the trial it was deemed important by the plaintiff to establish the fact that the fire in controversy started upon the right of way of the defendant. It was agreed by both parties that this extended 50 feet each way from the center of the track. Witness Coffman did not see the fire, or know from his own knowledge where or how it originated, but he had made exact measurements from points where he could judge the fire started, from an inspection of the ground, but he could not tell the exact spot. The fire had burned in some places clear to the track, and in other places further away, and he only knew the points where the fires started by hearsay. The measurements thus made show that one of the fires started 17 feet, and the other 22 feet, from the center of the track. This testimony was allowed to go to the jury over the objection of the defendant, with the understanding that the evidence on this point should be stricken out, unless the measurements were limited to the place where the fire started. Was this prejudicial or substantial error? We think not. An error is a wrong ruling or decision which violates some fundamental rule or principle of law, or some rule of pleading, practice, or evidence. But a mistake or a wrong ruling does not invariably constitute error. If a mistake in declaring the law or in the admission of evidence does not conduce to a wrong judgment, there is, strictly speaking, no error which will require a judgment to be reversed or annulled, upon that account. Admitting that the admission of Coffman's testimony was a mistake, it being in the nature of hearsay, did it prejudice defendant's case or influence the jury in rendering its verdict? Several questions were submit-

ted by the court at the request of counsel to the jury, one of which was, "How far from the center of the track did the west fire start?" Answer by the jury, "17-22 feet." If the answer was correct, and there was no other testimony upon which it was predicated, there could be no doubt but that Coffman's testimony would have been prejudicial to defendant, because it establishes the fact that the fire started on the right of way of defendant; and a different rule in damages applies than when the fire causing the damage originated off the right of way. But two other witnesses, Shaw and Maybee, testified that they saw the fire when it started. Shaw says: "I should judge the fires were about twenty feet from the track when I first discovered them; about twenty feet from the iron." Maybee testifies that "these fires started somewhere from 15 to 20 feet from the center of the railroad track." These witnesses were only about 25 rods from the railroad, and, while the distance the fire was from the center of the railroad was not accurately measured by them, yet the distance testified to by them was approximately accurate; and whether the jury found that the fire started 15 or 20 feet, or 17 or 22 feet, from the center of the track could make no difference with the defendant's liability, because both distances were within the right of way. It has been settled by the supreme court of the United States, and by the courts of last resort of several states, that a technical error by a trial court, which obviously wrought no injury to the substantial rights at issue is not ground for a reversal of the judgment. Iron Silver Min. Co. v. Mike & Starr Gold Min. Co., 143 U. S. 394, 12 Sup. Ct. Rep. 543; Smith v. Shoemaker, 17 Wall. 630. Again, this testimony having been admitted conditionally by the court, it was the duty of the attorney for the defendant to have made the motion to have it stricken out if the condition were not met by the testimony. The record fails to show that this was done. The inference may then be drawn that the testimony was unobjectionable as introduced.

The next error assigned is the court's overruling defendant's objection to the question asked Witness McDonald on cross-examination by plaintiff, as follows: "I want to ask you if you are willing to swear that there was no nearer point of the fire, where it had burned to the railroad track, than ninety feet, and west of the

point where you took your measurements?" This was objected to, because it was not proper cross-examination, and for the further reason that, if the plaintiff made the witness his own, he was attempting to contradict the sworn testimony of Witness Shaw, who had sworn that a creek was between him and the fire. These objections were overruled, and witness answered, "Yes; I am willing to." Afterwards Witness Coffman was recalled by plaintiff, and testified that he had heard McDonald's testimony concerning the measurements which he had made, and was then asked by plaintiff the following question: "I wish you to state if there was a point nearer than ninety feet where that fire burned to the railroad track." This was objected to, unless the answer is confined to measurements made east of the place spoken of by Witness McDonald, for the reason that upon that point plaintiff had made McDonald his own witness, and was bound by his answer. The objection was overruled, and witness answered: "I heard McDonald's testimony upon that point. It is not true, according to my observation and measurement." He was then asked the following question: "How near was the nearest point according to your observation and measurement? Answer Seventeen and twenty-two feet." The evidence throughout the trial had tended to show that there were three fires started by defendant's locomotive. Two were upon the defendant's right of way west of the highway and trestle bridge, which covered a small stream or creek, and one was east of this trestle, and not started on the right of way. McDonald was a witness called by defendant, and in his direct examination he had testified very generally as to taking measurements from where a section foreman said the nearest point was when the fire started, and 90 feet was the nearest point measured by him that morning. The question asked witness by plaintiff was not for the purpose of impeaching him or any other witness, but for the purpose of locating the exact place from which he (McDonald) had made his measurements, whether east or west of the trestle bridge, and to show his measurements of all the places upon the ground where the fire started. This was proper cross-examination, and, when he testified that the nearest point from the railroad track to where the fire started was

90 feet, it was competent for the plaintiff to overcome or contradict the testimony by counter evidence, if it could be done, and this was the object of the question propounded to Witness Coffman.  For this purpose it was competent.

The last important assignment is that the court erred in refusing to direct a verdict for the defendant.  A court is not justified in directing a verdict in favor of either party, unless upon an undisputed state of facts a contrary verdict could not be sustained. It was the effort of the defendant, during the trial, to show that the fire alleged to have done the damage was started on a Mr. Stone's place east of the highway, which was on the west side of section 19, and east of a creek or stream which ran between the fire and the property destroyed, and that this fire originated off the right of way.  On the other hand, the plaintiff contended and claimed to show that the fire caught directly west of the highway, on a Mr. Hill's place, and on the right of way of defendant, and that there was no creek intervening between the fire and the property damaged.  The motion to direct a verdict was based solely upon the fact that defendant had indisputably established its contention as to the starting of the fire, and that the plaintiff had wholly failed in his.  The testimony of Shaw and Maybee, witnesses called by the plaintiff, tends to show the fact that there were three fires set by the defendant's locomotive,—one on Mr. Stone's place, and two on Mr. Hill's place.  Mr. Stone's place was on the N. W. 1-4 of section 19, and Mr. Hill's place is the N. E. 1-4 of section 24.  There was a wagon road running on the section line between the two places.  It also tends to show that these fires ran together between a quarter and a half mile from the point where they originated, and extended to the plaintiff's place and burned the property.  And there was evidence tending to show that the two fires starting on the west of the highway originated on the right of way of defendant.  Such being the case, it was not error in the court to submit the case to the jury.

We have made a careful, and perhaps unjustifiably lengthy, review of this case, and, finding no prejudicial or substantial error in the record submitted to this court, it follows that the judgment of the court below must be affirmed.  All the judges concur.

KELLAM, J. I concur in the decision of this case because I do not think the record requires us to say that the conclusion of the trial court was such an abuse of discretion as to justify a reversal, yet I should have been better satisfied with a decision sustaining the challenge to the juror Lahey. I think that when a proposed juror states positively that he has formed an opinion upon the issue he is to try, that he still entertains such opinion, and that it would require the evidence of witnesses to remove or change that opinion, he is *prima facie* disqualified, and the fact that a series of suggestive and disciplinary questions results in his finally saying that, notwithstanding his previously formed and still entertained opinion, he could try the case impartially, does not necessarily remove such disqualification. Much importance is attached to the language of our statute, and to the fact that the information upon which the juror's opinion was formed was not derived from one who knew the facts, but it was derived from McLaughlin, who sustained precisely the same relation to the defendant and to the fire which caused the damage complained of as did the plaintiff himself. He was a sufferer by the same fire. If this plaintiff could recover, McLaughlin could; so that in respect to his qualifications as a juror in this case his opinion must be regarded as though it rested upon information received from the plaintiff himself. If McLaughlin, who was a victim of the same fire and who had the same interest as the plaintiff in ascertaining and knowing the true facts concerning it, had correctly informed the juror as to the facts, then he had prejudged the case, and was not a qualified juror. While considerable latitude must be conceded to the trial court in deciding upon the qualification of jurors, I cannot help thinking that any litigant or any attorney might fairly and reasonably object to trying his case before a jury of men, each of whom confessedly entertained an opinion which it would take evidence to change, resting not upon idle and unauthentic rumor, but upon information received from one sustaining precisely the same relation to the facts and the issue to be tried as the plaintiff himself. I make these suggestions in connection with this case because I believe the tendency of the courts in recent times is to drift away upon too slight excuse from the original notion that a

qualified juror is an indifferent and impartial juror,—a juror with a mind not preoccupied by any opinion upon the question to be tried that would require to be overcome and destroyed before he would be equally susceptible to evidence from either side.