HUTCHESON & KEY, DOYAL & DOYAL, HODNETT & WRIGHT, WATTERSON & KIMSEY and J. P. CHATFIELD, for plaintiff in error.   J. S. CANDLER, solicitor-general, by G. W. STEVENS, *contra.*

---

HINKLE *v.* THE STATE.

1. A juror who, in answer to the statutory questions prescribed for testing his competency, after receiving from the presiding judge a correct definition of the word "bias" and the phrase "perfectly impartial," testifies that he is perfectly impartial between the State and the accused, is without any disqualifying prejudice if he has neither seen the crime committed nor heard any part of the evidence delivered upon oath and if he has no fixed opinion, no opinion touching the guilt or innocence of the accused which will not readily yield to evidence, although he may entertain an unfixed or floating opinion upon the subject, founded on rumor, hearsay or newspaper reports, and may have expressed the same. In the true legal sense he has no prejudice, and if he is unbiased he may properly answer in the negative the question, "Have you any bias or prejudice resting upon your mind for or against the accused?"

2. As to the three jurors whose alleged incompetency was discovered after verdict, the finding of the trial judge in favor of their competency on the affidavits submitted to him *pro* and *con* was sufficiently supported by the evidence to render his finding on the

question of fact involved conclusive upon a reviewing court. This is true whether the affidavit as to the good character of one of the movant's witnesses be considered or not. Inasmuch as the general character of the witness was not attacked, the judge was not legally bound to receive evidence in support of it.

3. Counsel for the accused having invoked the rule for excluding witnesses from the court-room, and then sought to obtain an exception in favor of a son of the accused on the ground that he was not only a material witness but a necessary assistant in conducting the defence, by reason of his having taken a leading part in its preparation, it was discretionary with the court either to allow or to disallow the exception, and having disallowed it, and thereupon the counsel having withdrawn the son as a witness for the sake of having his services in court during the trial, and it not appearing what fact or facts he could or would have testified to as a witness, no such abuse of discretion as will justify the Supreme Court in directing a new trial has been made out.

4. There was no error, upon any of the grounds of objection presented, in allowing the clerk of the court to testify that the deceased was a witness in a given case previously tried in the same court and testified therein.

5. Even if the court erred in excluding evidence of uncommunicated threats which the accused sought to prove by one of the State's witnesses on cross-examination, the error was sufficiently neutralized by allowing the accused afterwards to recall the witness, not as his own, but as the State's witness, and examine him fully touching such threats.

6. The charge of the court to the jury, read all together so as to arrive at its true sense and spirit, was full, fair, impartial and correct. There was no substantial error in the same upon any of the topics embraced in the motion for a new trial, these topics being: impeached witnesses, *res gestæ*, considering evidence and prisoner's statement together, malice, presumption of malice, common intent of assailants in joint assault, manslaughter, justifiable homicide, felony and felonious assault, self-defence by first assailant, self-defence by slayer generally, defence of son, and duty of the jury to free themselves from external influences in deliberating on the case.

7. Although there was much evidence tending to support the theory of the accused that he committed the homicide in defence of his son, yet as there was abundant and very powerful evidence to the contrary, and the jury being the accredited agents of the law for the determination of such questions and they having found that the homicide was murder, and the trial judge having approved their finding, this court can discover no legal cause for reversing the judgment denying a new trial.        *Judgment affirmed.*

June 4, 1894. Argued at the last term.

Indictment for murder.　Before Judge Fish.　Sumter superior court.　November term, 1893.

. J. B. Hinkle and his son Albert were indicted for the murder of J. J. Worsham.　The killing occurred on December 21, 1892.　J. B. Hinkle was tried in January, 1894, and was found guilty with a recommendation to life imprisonment.　His motion for a new trial was overruled, and he excepted.

1. In defining to the jurors the meaning of the statutory questions put to them on their *voir dire*, the court gave instructions which were assigned as error, and which were in substance as follows: Prejudice means a prejudging of the case from any cause.　If you have a settled and fixed opinion either as to the guilt or the innocence of the accused, no matter from what cause that opinion is derived or upon what it is based, whether rumor, hearsay, newspaper reports, evidence upon former trial, or from anything else, if it is a fixed and settled opinion and one that will not readily yield to the testimony, you would be disqualified on that ground. The question relates to the present condition of your mind; not whether you have had an opinion at some past time.　An opinion which is not fixed or settled, that will yield readily to the testimony, even though the juror may have formed and expressed an opinion from having read a newspaper report of the evidence upon a former trial, would not of itself disqualify him.　Bias means a leaning or inclination towards or against the accused.　The question whether the juror is perfectly impartial means, whether he is perfectly perpendicular between the State and the accused, whether he is in such condition as to be swayed the one way or the other by the testimony.

2. Several grounds of the motion for new trial were based on the allegation that three of the jurors who tried the case were not legal and competent, for that,

before they qualified, they had stated that Hinkle and his son were guilty of murder and ought to be hung, and that if they (the jurors) were put upon the jury they would hang the Hinkles, etc.   Numerous affidavits were offered to support these grounds, and were met by affidavits of the jurors attacked, and by other affidavits supporting their good character and corroborating them as to various circumstances.   On the hearing of the motion, movant offered affidavits by a number of persons, to the effect that the character of one of the affiants for movant (by whom it was sought to prove one of the allegations against the jurors) was good, and that deponents would unhesitatingly believe him upon oath upon all occasions. The court declined to consider the affidavits so offered, and error was assigned upon this ruling.

3. The third head-note sufficiently states the facts with regard to the withdrawal of Eugene Hinkle as a witness.

4. The clerk of the court was allowed to testify that on December 13, 1892, as appeared by the minutes, a case was tried in said court between Dr. Burt, plaintiff, and J. B. Hinkle, defendant, and that Worsham testified in the case.   This was objected to as immaterial and irrelevant, and because the clerk had been in the court-room during the trial.

5–7. A report of the other grounds of the motion, beyond what is indicated by the head-notes, would not be useful here.

FORT & WATSON, HUDSON & BLALOCK, LITTLE, WIMBISH & WORRILL, JAMES DODSON & SON, PILSBURY & WINCHESTER, J. A. ANSLEY, C. W. BASS and H. D. D. TWIGGS, for plaintiff in error.   J. M. TERRELL, attorney-general, J. M. DuPREE, solicitor-general, R. L. BERNER, E. A. HAWKINS, E. F. HINTON, J. A. HIXON and W. K. WHEATLEY, contra.