## SMITH et al. v. ALLBRIGHT et al.
(No. 6934.)

(Court of Civil Appeals of Texas. Austin.
Nov. 18, 1925. Rehearing Denied
Jan. 27, 1926.)

**1. Trial ⬥⟹351(2) — All facts not submitted or requested to be submitted to jury found in favor of judgment rendered.**

The law finds all facts not submitted or requested to be submitted to a jury in favor of the judgment rendered.

**2. Mortgages ⬥⟹378—One collaterally attacking trustee's deed can only insist on showing that trustee complied with terms of power of sale which would render sale void on failure to comply.**

One collaterally attacking trustee's deed can only insist that it be shown that trustee complied with terms, conditions, and prerequisites imposed upon his power of sale, which would render the sale void, if he failed to comply with them.

**3. Judicial sales ⬥⟹47 — Mortgages ⬥⟹378— Claim or right of purchaser under judicial or deed of trust sale cannot be attacked collaterally, if sale is merely voidable.**

Where one acquires a claim or right of title to property as purchaser under judicial or deed of trust sale, such claim or right cannot be attacked collaterally, if the sale is merely voidable.

**4. Mortgages ⬥⟹358—Immaterial that record fails to show that property was sold separately, where suit was not brought because of violation of statutes requiring such sale and record does not show that property was sold in bulk.**

Where suit to set aside sale under trust deed was not brought because of violation of Sayles' Ann. Civ. St. 1897, art. 2363, requiring that lots be sold separately, nor was it claimed that property was sold at sacrifice, nor did record disclose that property was sold in bulk, it was immaterial that record failed to show that it was sold separately.

**5. Mortgages ⬥⟹360—Sale under deed of trust is void, unless terms imposed substantially complied with.**

Sale under trust deed is void, unless it is shown that all of terms and conditions imposed by deed of trust have been substantially complied with.

**6. Evidence ⬥⟹83(1)—Legal presumption that officials making judicial sales properly performed duties does not apply to sales under powers granted by deeds of trust.**

Presumption that officials making judicial sales properly performed their duties does not apply to sale under trust deed, as exercise of such power is a harsh remedy, and can only be exercised by strictly complying with terms imposed on power of sale by maker of trust instrument.

**7. Evidence ⬥⟹370(4)—Trespass to try title ⬥⟹41(1)—Testimony of trustee who made sale under trust deed held sufficient to support verdict upholding sale.**

Testimony of trustee who made sale under trust deed, identifying certified copies of deed of trust and relative to procedure had in making sale, held sufficient to permit introduction of deed of trust and trustee's deed thereunder, and to support verdict in favor of such deed.

**8. Wills ⬥⟹434—Foreign will proceedings, attacked collaterally in proceeding to try title because of discrepancy in name, held not void, but merely voidable.**

Foreign will proceedings, attacked collaterally on ground that name of grantee in trustee's deed and of testator in will proceedings were not the same are not rendered void by reason of discrepancy, but merely voidable, where record discloses similarity of name and residence.

**9. New trial ⬥⟹144—Proof held sufficient to show that fair and impartial trial was not had because of "bias" of juror.**

Proof that juror knew plaintiff, and had exerted influence in jury room for him, held ample to show that fair and impartial trial was not had, as guaranteed by Const. art. 1, § 15, and Rev. St. 1911, art. 5117, particularly section 4, disqualifying any person who has "bias" or prejudice (citing Words and Phrases, First and Second Series, "Bias").

**10. New trial ⬥⟹42(2)—Party against whom bias exists can complain thereof as ground for setting aside verdict.**

Where juror denies existence of any bias in favor or against either party, and is accepted, party against whom such bias or prejudice exists may complain thereof as ground for setting aside verdict.

**11. New trial ⬥⟹42(2)—New trial is not within discretion of trial judge, where undisputed testimony shows bias of juror as matter of law.**

Rule that matter of refusal of new trial is within sound discretion of trial judge is not applicable, where testimony is undisputed, showing bias on part of juror as a matter of law.

On Motions for Rehearing by Both Appellants and Appellees.

**12. Trespass to try title ⬥⟹39(1)—Evidence of sheriff's return showing citation in newspaper admissible after contention that newspaper had ceased publication before such date.**

Where trustee testified that he had published notice of sale under trust deed, as required by Sayles' Ann. Civ. St. 1897, arts. 2366, 2367, and attempt was made to show that paper had ceased publication before such date, evidence of sheriff's return in an entirely different cause, stating that he had published citation in such newspaper after that date, was admissible.

Appeal from District Court, Brown County; J. O. Woodward, Judge.

Suit by J. E. Allbright against Annie E. Smith and others, wherein W. L. Futch and

wife were made parties defendant. From a judgment for plaintiff and impleaded defendants, defendants appeal. Reversed and remanded.

Jenkins, Miller & Harris, of Brownwood, for appellants.

Critz & Woodward, of Coleman, and Courtney Gray and I. J. Rice, both of Brownwood, for appellees.

BLAIR, J. This is the second appeal of this cause. Our opinion on the first appeal is reported in 261 S. W. 461. We will not take space to again state the nature of the suit, except that it is one in trespass to try title, brought by appellee Allbright against appellants Annie E. Smith et al. W. L. Futch and wife were made defendants by Allbright, but they joined him in the prosecution of his suit, and are here as appellees.

On the former appeal we reversed and remanded the case because the trial court held that the recitals of fact in a trustee's deed, under which appellees claim title, made a prima facie case that the sale was legally made, in absence of a provision in the deed of trust giving such recitals of fact that effect.

We also reversed and remanded the case because the trustee's deed recited that the sale was made after notice was given by posting notices of the sale in three public places, while the deed of trust required the trustee to sell "after giving notice of such sale as required in judicial sales." The law then governing judicial sales required that such notice be published in a newspaper once a week for 3 consecutive weeks immediately preceding the sale.

A second trial was had to a jury upon the following special issue:

"(1) Was the notice of the sale of the land in question published by Drew Pruitt, Trustee, in a newspaper in Brown County, Texas, for four weeks prior to the date of the sale of land by said Drew Pruitt under such deed of trust? Answer this question 'Yes,' or 'No.' "

The jury answered the question, "Yes."

[1] No objection was made to the issue submitted, nor was there a request that any other issues be submitted. Upon the jury's verdict judgment was rendered for appellees for the respective lands claimed, and for all other relief sought by them. The judgment also recited that the trial court found all issues of fact not submitted to the jury in favor of appellees. This finding is immaterial, since the law finds all facts not submitted or requested to be submitted to a jury in favor of the judgment rendered.

Appellants' first two propositions complain of the introduction in evidence of the deed of trust and the trustee's deed thereunder, upon the grounds that these instruments, in absence of a provision in the deed of trust to that effect, were not evidence that the trustee had done all the things recited in his deed, and that there was no proof that the trustee, in attempting to make the sale, complied with the terms, conditions, and limitations imposed by the deed of trust upon his power to sell the land in controversy. The claim is made that the following conditions and limitations imposed by the deed of trust on the trustee's power of sale were not complied with under the proof:

(1) That no default in the payment of the debt secured by the deed of trust was shown.

(2) That no request by the legal holder or holders of the notes to trustee to sell was shown.

(3) That no notice was given of the sale as required in judicial sales by a publication of the notice in the English language in a newspaper in Brown county, Tex., for three consecutive weeks next preceding the sale of the property, or that the notice contained the matters which articles 2366 and 2367, Sayles' Statutes 1897, required to be in such notice.

(4) That the land in controversy was not shown to have been sold to the highest bidder at the courthouse door in Brown county after notice.

(5) That there was no proof that such sale was made between 10 a. m. and 4 p. m. on the first Tuesday in the month for cash, at public vendue.

(6) That there was no proof that the acreage property in the county was sold separately from the town lots, or that the town lots were sold separately from each other, as required by art. 2363, Sayles' Statutes 1897.

The deed of trust imposed the first five of the conditions and limitations upon the power of sale by the trustee. It did not require that he sell each tract separately as set forth in the sixth particular; but such was a statutory requirement in force at the time of the sale in question.

[2-4] It might be well to here state that, since the appellants are not attacking the trustee's deed directly, but collaterally, they can only insist that appellees show the trustee complied with the terms, conditions, and prerequisites imposed upon his power of sale which would render the sale void, if he failed to comply with them. The rule is well settled in Texas that, where one acquires a claim or right to title to property as a purchaser under a judicial or deed of trust sale, such claim or right cannot be attacked collaterally if the sale is merely voidable. Ayers v. Dupree, 27 Tex. 594, 86 Am. Dec. 657; Carl v. Settegast (Tex. Com. App.) 237 S. W. 238; Ives v. Culton (Tex. Com. App.) 229 S. W. 321. Appellants do not bring suit to set aside the sale because the statutes in question which required the lots to be sold separately had been violated; nor do they make any claim that the property sold was sacrificed; nor does the record disclose that the property was sold in bulk; and under such state of facts it is immaterial that the record fails

to show that it was sold separately. Wilson v. Swasey (Tex. Sup.) 20 S. W. 48; Loan Co. v. Avery (Tex. Civ. App.) 41 S. W. 673.

[5, 6] As to the first five particulars in which it is contended that the proof fails to support the verdict and judgment, we are of the opinion that, since the deed of trust imposed these upon the power of sale, each of them must be shown to have been substantially complied with, otherwise the sale is void. In this connection appellees contend that, since judicial sales are strengthened by the legal presumption that the officials making them properly performed their duties, and irregularities only render such sales voidable and not subject to a collateral attack, the same rule should apply to sales by trustees under power granted in deeds of trust. While it is true that such legal presumption exists in favor of judicial sales, it is well settled that no such presumption prevails as to trustee's sales under powers granted by deeds of trust; the reason for the rule being that the exercise of such powers is a harsh remedy, and that it can only be exercised by strictly complying with the terms and conditions imposed upon the power of sale by the maker of the trust instrument. Miesner v. Taylor, 56 Tex. Civ. App. 187, 120 S. W. 1014; Michael v. Crawford, 108 Tex. 353, 193 S. W. 1070; Willie v. Hays (Tex. Civ. App.) 207 S. W. 427; Bowman v. Oakley (Tex. Civ. App.) 212 S. W. 549. In the case of Fischer v. Simon, 95 Tex. 234, 66 S. W. 882, it is held:

"A mere irregularity will not serve to render void a sale under execution, and it has been held that defective notice is a mere irregularity. Such sales are upheld on collateral attack on grounds of public policy. Morris v. Hastings, 70 Tex. 26, 7 S. W. 649 [8 Am. St. Rep. 570]. On the contrary, the trustee acts only through the deed of trust; his authority being derived from no other source. * * * His authority is special, not general; and, under an instrument such as the one under discussion, no latitude can be given him in the exercise of the power."

[7] However, we are of the opinion that the evidence sufficiently supports the verdict and judgment with reference to these five particulars. Drew Pruitt, the trustee who made the sale, testified by deposition in substance that he identified certified copies of the deed of trust in question, and the trustee's deed executed by him, which were attached to the depositions for identification by him; that default had been made in the payment of the notes secured by the deed of trust at maturity; that G. W. Simpson, whom he knew to be one of the legal holders of the notes, requested him to sell the property in satisfaction of the notes before he did anything toward making the sale; that said deed of trust was in due and regular form, made to him as trustee, and contained the usual power of sale, but did not provide that re-

citals in the trustee's deed executed under the power of sale should be taken as true; that he gave legal notice as to the time and place of sale by posting three notices in separate places in Brown county, Tex., one of them being at the courthouse door, for a period of 20 days prior to the 7th day of December, 1897; that in addition to posting notices he also published a notice of the sale in the Living Issues, a newspaper published in Brown county, Tex., once a week for a period of 4 consecutive weeks next preceding the date of sale; that he also served each of the makers of the notes and deed of trust personally with notice of sale; that he sold the property at the courthouse door in Brown county, to the highest bidder, one S. B. Hibbard, after notice had been given as above stated, on the 7th day of December, A. D. 1897, the same being the first Tuesday in the month, by virtue of the authority conferred upon him by the deed of trust. He also testified that he was engaged in the practice of law at Fort Worth, Tex., at the time he made this sale, and was familiar with the law in regard to the sale of land under deeds of trust and judicial proceedings prevailing in this state at the time, and was familiar with the acts of 1889 and 1893 pertaining to judicial and deed of trust sales; that he made this sale in accordance with the laws governing judicial sales at that time; and that in making the sale in question he did every act required of one making a judicial sale to make it legal. This testimony was not objected to in any manner, and we are of the opinion that it was sufficient to permit introduction of the deed of trust and the trustee's deed thereunder, and supports the verdict of the jury and judgment of the court. Roe v. Davis, 106 Tex. 540, 172 S. W. 708, 51 L. R. A. (N. S.) 268.

Appellants' third, fourth, and fifth propositions relate to questions arising from the recording of a foreign will proceedings, or as to irregularities relating to the name of the testator. All these matters, except the one relating to irregularities in the use of the testator's name, were disposed of against appellants' contention on the former appeal, and concerning these we find no occasion to change our former views. In the trustee's deed grant of the property in question was made to S. P. Hibbard, of "the county of Suffolk, state of Massachusetts." The will, executed in 1891 and probated in 1901, was signed "Salomon P. Hibbard of Suffolk county, Mass." In the probate proceedings the name Salomon P. Hibbard, or S. P. Hibbard, was used, while in one instance in the record the name Simon P. Hibbard was used. No issue of identity of Hibbard was made either by the pleadings or proof of appellants.

In the case of Jester v. Steiner, 86 Tex. 415, 25 S. W. 411, the Supreme Court held:

"Similarity of name is held to be sufficient to establish identity of the person when there is

no evidence to the contrary, and no suspicion cast upon the transaction by the evidence."

See, also, cases cited by this authority at page 412.

[8] In this proceeding appellants merely attack the foreign will proceedings collaterally, and, since the record discloses a similarity of name and residence of the grantee in the trustee's deed and of the testator in the will proceedings, and since no direct attack has been made upon the foreign will proceedings for such discrepancy of name, and the evidence in no way casts suspicion upon the transaction, we are of the opinion that the foreign will proceedings are not rendered void by reason of the discrepancy in name, but merely voidable. That being true, appellants are in no position to insist upon those propositions.

We have carefully examined appellants' sixth, seventh, eighth, ninth, tenth, and thirteenth propositions, and find that they were either disposed of adversely to them on the former appeal, or that they are without merit, and here overrule them.

[9] Their eleventh proposition presents a more serious matter for determination. It reads:

"(11) A person who has a bias or prejudice in favor of or against either of the parties is disqualified to sit as a juror in a case where a juror on his voir dire failed to disclose any bias or prejudice in favor of one of the parties but after the jury retired to consider of its verdict showed such bias and prejudice, stated matters to the jury not in evidence and became the advocate of one of the parties in whose favor he finally secured a verdict and such facts are discovered after verdict and judgment and presented in motion for new trial same should be granted."

The following is the entire testimony on which the proposition is based; being the testimony of Henry Buck, a member of the jury that tried the case:

"I was one of the jurors that tried this case about two or three weeks ago. I remember Mr. Carr who was on that jury. With reference to what Mr. Carr said as to his acquaintance or relations to Mr. Futch, about all I remember his saying was that he had known Mr. Futch for some time. I believe he said he had lived at Coleman and knew Mr. Futch pretty well, and that he believed Mr. Futch knew what he was doing when he bought those lots; that he didn't believe Mr. Futch would have bought them if he hadn't thought the title was clear; and he didn't think there was any argument to it. The jury was out something like a day. As to whether or not in discussing the case Mr. Carr contended for Mr. Futch's standpoint all the time, according to the way he expressed himself, it was that he was very much in favor of Mr. Futch on account of knowing Mr. Futch like he did. I believe he said he had lived at Coleman possibly some two or three years and knew Mr. Futch well. That character of statements and arguments by him was when we first went into the jury room, and it was the same thing throughout our deliberation."

Cross-examination:

"Q. You don't mean to tell the court that Mr. Carr rendered a verdict or voted in favor of answering the question 'Yes' simply because he knew Mr. Futch and was a friend of Mr. Futch, do you? A. No; I did not say that."

No other juror testified on the hearing of the motion for a new trial, and the above testimony stands uncontradicted.

The record discloses that each juror was examined on his voir dire as to his bias and prejudice, and each denied having any bias or prejudice.

The proposition correctly states the law, and we have reached the conclusion that the proof is ample, so far as concerns juror Carr, to establish the fact that appellants did not have a fair and impartial trial by a fair and impartial jury, as guaranteed by article 1, section 15, of the Texas Constitution, and article 5117, R. S., and especially section 4 of said article, which disqualifies "any person who has a bias or prejudice in favor of or against either of the parties," as a juror to try a particular case.

The authority 1 Words and Phrases, First Series, p. 770, makes the following observation from its research of the cases:

"Bias, according to Webster, is a leaning of the mind; propensity or prepossession toward an object or view, not leaving the mind indifferent; bent; inclination. Mitchell v. State, 36 Tex. Cr. R. 278, 36 S. W. 456, 464, Gulf, C. & S. F. Ry. Co. v. Gilvin (Tex. Civ. App.) 55 S. W. 985, 986. The term is so used in Code Cr. Proc. Tex. art. 636, subd. 12, providing that a bias in favor of a defendant is as much a cause for challenge as a prejudice against him. Withers v. State, 30 Tex. App. 383, 17 S. W. 936. * * *

"Anderson says, 'Bias in a juror is being under an influence which so sways his mind to one side as to prevent his deciding the cause according to the evidence.' Haugen v. Chicago, M. & St. P. Ry. Co., 3 S. D. 394, 53 N. W. 769, 771."

This same authority in volume 1, at page 438, Second Series, says:

"'Bias,' as applied to the competency of jurors, is synonymous with partiality."

In the case of Insurance Co. v. Elmore (Tex. Civ. App.) 226 S. W. 715, the court quoted with approval the definition of bias found in 1 Bouvier's Law Dictionary, p. 341, which is as follows:

"'A particular influential power which sways the judgment; an inclination or propensity of the mind towards a particular object.' 5 Cyc. 685."

This case further defines the term:

"Bias is a leaning towards a party. In other words, the juror must be a perfect perpendicular between the parties as such and in such situation as to be swayed either one way or an-

other. Hinkle v. State, 94 Ga. 595, 21 S. E. 595."

If we apply these definitions of bias to the statements of juror Carr to his fellows while deliberating on this case that he was well acquainted with · defendant Futch, having lived in the same town with him for a number of years, that he believed Futch knew what he was doing when he bought the lots in controversy, that he did not believe he would have bought them, if he had not thought the title was clear, and that he did not think there was any argument to it, which matters he continued to argue during the 24 hours the jury were deliberating, and until a verdict was returned for Futch, there can be no escape from the conclusion that the evidence is sufficient to establish bias on the part of this juror as a matter of law.

Apply this further test to Carr's statement, and his bias becomes apparent. Suppose, instead of answering counsel's question on voir dire examination that he had no bias, he had stated that he lived by and was well acquainted with defendant Futch, that he believed Futch knew what he was doing. when he bought the lots in controversy, that he did not believe he would have bought them if he had not thought the title clear, and that he did not think there was any argument to it, could there have been any question but that he was disqualified because of bias? We think not, and feel sure that the trial judge would have immediately held him disqualified had. he so testified on his voir dire. Consequently we are of the opinion that the proposition presents error requiring a reversal of the case.

Counsel did all they could to ascertain these facts, and were misled into the belief that the juror was fair and impartial, and only learned the truth of the matter after the trial. Under such circumstances a new trial should have been granted.

In the case of Ry. Co. v. Dickens, 54 Tex. Civ. App. 615, 118 S. W. 615, this court held:

"A fair and impartial trial by a fair and impartial jury is what the law exacts, and this requirement becomes a delusion if men with bias or prejudice or preconceived ideas of the rights of one are allowed to sit in judgment on his case."

[10] The authorities in this state are universal in holding that, where a juror in a particular case denies the existence of any bias in his mind in favor of or against either party to the suit, and is accepted as a juror, on such statement, the party against whom such bias or prejudice exists can complain of the same as a ground for setting aside the verdict. ˙ See Rhoades v. Ry. Co. (Tex. Com. App.) 248 S. W. 1066, 27 A. L. R. 1048, and cases there cited.

[11] The rule contended for by appellees that the matter of the refusal of a new trial was within the sound discretion of the trial judge is not applicable, where the testimony is undisputed, showing bias on the part of a juror as a matter of law.

In the case of Rhoades v. Ry. Co., supra, Section A of the Commission of Appeals held:

"The evidence shows, we think, without dispute that the juror Staggs, and possibly the juror Aten, had such bias or prejudice against the plaintiff, or against his cause, as to disqualify him or them to sit as jurors in this case, and that on account thereof the plaintiff has not had a trial of his cause before a fair and impartial jury, as guaranteed by the Constitution and laws of this state. * * * But the fact remains that bias or prejudice existed, and it did not devolve on plaintiff to show affirmatively that he suffered injury as a result thereof. Our recommendation in this case is predicated on the existence of such disqualification. This being the case, it is not necessary to decide whether the misconduct of the jury in this particular case can be reviewed in the absence of a statement of facts, nor whether the trial court abused his discretion in refusing a new trial on that ground."

We think this authority conclusive of the proposition here asserted by appellants. See, also, Ins. Co. v. Elmore (Tex. Civ. App.) 226 S. W. 715, and Ry. Co. v. Dickens, 54 Tex. Civ. App. 637, 118 S. W. 615.

In view of this disposition of the case, we do not deem it necessary to discuss appellants' twelfth proposition, which presents a question of misconduct of the jury not likely to happen on another trial.

The cause will be reversed and remanded. Reversed and remanded.

### On Motions for Rehearing by Both Appellants and Appellees.

Both motions for a rehearing are overruled without written opinion, except as to one proposition urged by appellants. It relates to the admission in evidence, over objection, of a citation showing a sheriff's return thereon, in a cause in the district court of Brown county, Tex., but in no way connected with the case at bar, and to which none of the litigants here were parties, and in which the sheriff stated that he had published the citation in that cause in the Living Issues, a newspaper, published in Brown county, Tex., for certain weeks in April, 1898. The objection was that it was hearsay testimony on a material, disputed issue, and of such a character as that it probably would influence the verdict of the jury upon the only and controlling issue of fact involved in the case.

The sole issue of fact was whether the trustee, who made the sale of the land in controversy on December 7, 1897, had published the notice of such sale in a newspaper, as required by law. He testified that he published it in the Living Issues, a newspaper then published in Brown county, Tex. Appellants' witness, Judge C. H. Jenkins, who was at least shown to have been interested

in the publication of that newspaper, testified that it was his best recollection that the paper had ceased publication before the date the trustee testified he published the notice. Another witness for appellants testified to the same effect. Whereupon appellees introduced the sheriff's return complained of.

[12] We think that under these facts the testimony was competent. The matter inquired into related to the happening of events some 25 or 30 years prior to the date of trial. It is admitted by all parties that such a newspaper as the Living Issues was published in Brown county, Tex. It is also admitted by all parties that no records or copies of this paper could be found, and that none had been preserved by those in charge of its publication. Of course, the paper would have been the best evidence, but it could not be produced. It would also have been better evidence that it had not ceased publication than the recollection of the witnesses that it had. That being true, we think that a sheriff's return in a proper judicial proceeding showing that he had published a citation in a newspaper called the Living Issues, in Brown county, Tex., immediately after the date of sale here involved, became competent evidence for what it was worth to the jury in determining the main issue, whether or not Drew Pruitt had published notice of the trustee's sale in a newspaper called the Living Issues, in Brown county, Tex.

Motions overruled.