PHILIP M. CUNEY v. L. G. DUPREE, ADM'R.

Where a party by his mode of pleading proposed to show that a particular transaction was not a trust, but that it was as it purported to be, an absolute sale made in good faith and for valuable consideration paid ; he cannot be permitted to show as an additional independent fact, that the sale was made to delay, hinder or defraud his creditors, to defeat the trust.

A contract reduced to writing may be affected by a verbal trust. But such trust, to be enforced, must be established with clearness and certainty.

Appeal from Washington. Tried below before the Hon. R. E. B. Baylor.

Suit by defendant in error, administrator of Lewis G. Dupree, to recover slaves which he alleges to have been conveyed by his intestate to the plaintiff in error by a bill of sale absolute on its face, upon the averment that the bill of sale was, though absolute in its terms, made only in trust to secure certain amounts paid by the plaintiff in error for the intestate ; and that the reasonable hire of the slaves had more than discharged the amount so paid.

The plaintiff in error answered by denying the allegations of the petition, and specially setting up that he purchased said slaves in good faith, and for a valuable consideration which he had paid ; and denying that the bill of sale was ever intended or understood as a mortgage. An amended answer, pleading the Statute of Limitations, was put in ; also setting out specifically various advances and payments made for the benefit of the intestate Dupree, and which were alleged to be payments on the purchase money of the negroes sued for.

On the trial, the defendant in error proved by a witness, that Cuney admitted in conversation with him, a short time after the death of intestate, that he had the negroes on hire,

and was willing to keep them on fair hire until they worked out what he had paid or had assumed to pay for intestate. Proof was also made of the value of the negroes and their hire. In defence, the plaintiff in error introduced a copy of the bill of sale from Dupree and wife to him, and evidences of various payments made by him of Dupree's debts and orders, and of advances made to him and for his use in various ways. Also the evidence of several witnesses proving the statements of Dupree and wife, to the effect that they had sold him the negroes, and the transcript of a judgment against Dupree, in Washington county, for some five thousand dollars.

The following charges, asked by the defendant in error, were given by the Court :

1st. "That although the bill of sale purports to be an absolute bill of sale, still if the same was in fact, at the time it was given, intended to secure the sums of money assumed or to be assumed by defendant for L. G. Dupree, that the transaction will be held as a mortgage ; and if the jury believe from the evidence, that the contract was in fact thus understood between the parties as a security for the payment of debts of Dupree, assumed by defendant Cuney, that they will find for the plaintiff."

2d. "That the testimony of one witness, sustained by corroborating circumstances, is sufficient to control the import of a deed or bill of sale absolute on its face ; and the jury may take into consideration the situation of the parties, the embarrassed condition of Dupree, the real object and intention of the parties as disclosed by the whole testimony, in determining whether the same was an absolute sale, or whether only intended to be a security for money advanced or to be advanced."

3d. That if the jury believe from the evidence, that the bill of sale, though absolute on its face, was in fact intended as a mortgage, that in that event the Statute of Limitations would not afford any bar to the plaintiff's action.

The plaintiff in error asked the Court to give eleven distinct instructions, all of which were given except two, which are in the following words:

"That if they believe from the testimony, that Dupree and wife conveyed said negroes to Cuney with the intent or purpose to delay, hinder, or defraud their creditors, they will find for the defendant."

"That if said conveyance to Cuney was fraudulent on the part of Dupree and wife, it matters not as between these parties whether or not the purchase money was paid."

There was a verdict and judgment in favor of the defendant in error, for the negroes and for a balance of $990 84.

The giving of the charges asked by the defendant in error, and the refusal to give those asked by the plaintiff in error are assigned as errors; also that the verdict was against the evidence, and that the Court erred in refusing a new trial.

*F. Lipscomb & Z. Hunt*, for plaintiff in error. The instrument in question was solemnly acknowledged by the intestate and his wife before a competent officer, and they state in that acknowledgment, that the instrument was made for the "purposes and considerations therein set forth and contained:" then according to that acknowledgment it must have been an absolute sale, for the sum of money specified in the instrument. Does not this acknowledgment plainly show the intention of the parties, and ought it not to estop the defendant in error from showing that his intestate meant and intended an instrument different from the one thus acknowledged? Is not this acknowledgment a binding admission of the intention of the parties? Are not heirs and privies bound by admissions made in or about any instrument? In addition to this, the witness Bradbury, the officer before whom the acknowledgment was made, seems to make it clear beyond a possible doubt what the parties intended.

In Stampers v. Johnson, (3 Tex. R. p. 1,) there a defeasance was taken. In Carter v. Carter, (5 Tex. R. p. 93,) the evidence was, that at the time of the contract, it was but at most a conditional sale, and that the property might be redeemed, and there was no acknowledgment by the vendor, as in this case, of the express "purposes" and "considerations" for which the instrument was made. In the case of Stephens v. Sherrod, (6 Tex. R., p. 294,) there was also a defeasance to the bill of sale. In Mead v. Randolph, (8 Tex. R. 191,) the matter sought to be explained was a bond for title to land, and that the bond was not intended as a contract for the sale of land by the parties. In this case there was no acknowledgment before a proper officer, as in the case at bar, as to what the parties meant, and intended by the instrument. It is expected by us that counsel for defendant in error will rely upon the foregoing, and similar authorities, to sustain their case ; but we think that those authorities, according to the views above taken, are not in point, and they fall short of coming up to a strong feature in this case, to-wit : that the parties in those cases never made, as in this case, a public declaration and acknowledgment, as to the meaning and intention of the instrument, before an officer authorised by law to take such acknowledgment.

To show that this conveyance was a bill of sale, and that the weight of the evidence is to that effect, reference is made to Bradbury's testimony, where he states that various debts of the intestate were taken into account at the time of making the conveyance, the payment of which being assumed, and gave a draft to said intestate for the balance of the purchase money.

*H. N. & M. M. Potter*, also for plaintiff in error. For the plaintiff in error we shall examine but one proposition, the other questions presented by the record having been fully argued by the other counsel for plaintiff in error.

The second assignment of error is as follows : "The Court erred in refusing instructions asked by defendant."

The fourth instruction asked by defendant and refused, is as follows :

"That if they (the jury) believe from the testimony, that Dupree and wife conveyed said negroes to Cuney, to the intent or purpose to delay, hinder or defraud their creditors, they will find for the defendant."

The case made by the petition is, that the bill of sale from Dupree and wife to Cuney was intended as a mortgage. To which the defendant asserts an utter denial. The bill of sale, a copy of which is attached to the petition, is absolute on its face, and Cuney took possession of the negroes under it and held them. The negroes conveyed to Cuney was all the property that Dupree had, with the exception of one or two horses; and the petition states, and the evidence fully shows, that Dupree was heavily indebted at the time of the conveyance. Upon the face of the transaction then, as shown by the petition and evidence, it would appear that the conveyance was made by Dupree and wife with the intent and purpose of delaying, hindering or defrauding their creditors. The evidence clearly tended to prove this proposition ; and if so, the instruction asked should have been given by the Court. It is no answer to this to say that the defendant did not set up as a defence in his answer, that the conveyance was made to delay, hinder or defraud the creditors of Dupree. This was not necessary. The issue tendered by the plaintiff was as to the conveyance being a mortgage; and whatever the understanding might have been between Dupree and Cuney in relation to the conveyance, yet under the denial that the instrument was intended as a mortgage, the defendant had the right to give in evidence any matter tending to show that the transaction could not have the legal effect claimed for it by the plaintiff. In the case of Griffin v. Chubb, (7 Tex. R. 612,) this Court says: In principle, there can be no reason for requiring the defen-

dant to plead specially, facts which amount to no more than a denial of the plaintiff's averments ; or facts which it will only become material for the defendant to prove, for the purpose of rebutting, or repelling, the evidence introduced by the plaintiff." It was to rebut or repel the evidence introduced by plaintiff, that this evidence was introduced by defendant, and this charge asked. It was to show that the legal effect of the transaction was not such as claimed by him.

If, as the evidence and the case as made by plaintiff strongly tends to show, the object of Dupree in making the conveyance was to delay, hinder or defraud his creditors, then there can be no question that Dupree, his heirs, executors or administrators cannot recover the property under any circumstances. (Hart. Dig., Art. 1452 ; Danzey v. Smith, 4 Tex. R. 411 ; Epperson v. Young, 8 Id. 135 ; Wilson v. Trawick, 10 Id. 428.)

All the circumstances attending the transactions of the plaintiff's intestate shows that Dupree had a fraudulent intent. "Fraud may be inferred from facts and circumstances, from the character of the contract, or from the condition and circumstances of the parties." (Pope v. Andrews, 1 S. & M. Ch. Rep. 156 ; Watkins v. Stockett, 6 Har. & J. 435.)

In addition to the authorities cited by our colleagues, on the point that one witness is not sufficient to prove a trust against an absolute deed, we refer the Court to Miller v. Thatcher, 9 Tex. R. 483 ; Hall v. Layton, 10 Id. 55 ; same case, 16 Id. 262.)

*N. Holland,* for defendant in error. It is submitted that the "question of mortgage or not" "depending upon written and parol evidence," (5 Tex. R. 93,) was fairly before the jury, and though there may have been a conflict of testimony, it was the exclusive province of the jury to weigh the whole evidence, with all the circumstances in proof connected with the transaction, and arrive at their own conclusions upon the issue presented for their determination. This they have done in

Cuney v. Dupree.

their verdict in this case, and that verdict this Court will not disturb, unless it be manifestly wrong, without evidence, or clearly contrary to or against evidence.  Dallam, 376, 429, 618 ; 1 Tex. R. 326 ; 2 Tex. R. 428, 490 ; 4 Tex. R. 465 ; 5 Tex. R. 93, 492 ; 7 Tex. R. 3, 556, 561, 584; 8 Tex. R. 439.)

It is submitted that the instructions of the Court given to the jury, were as fair and equally balanced as they could have been under the proof, and as little calculated to wrongly influence the jury as instructions well can be.  The two instructions asked by defendant and refused, were properly refused. There was no allegation of fraud in the answer, or of intent to delay or hinder creditors ; the Court therefore was under no obligation to give these instructions, and there was no error in refusing them.  Evidence to establish a fact of this kind, not alleged, should have been disregarded.  (7 Tex. R. 338 ; 3 Tex. R. 10, 317 ; 4 Tex. R. 69.)


ROBERTS, J.  Defendant in error, as administrator of the estate of Lewis G. Dupree, deceased, brought suit against plaintiff in error to recover back some slaves which had been conveyed by Lewis G. Dupree, in his life time, and his wife, by regular bill of sale to Cuney, upon the ground that the bill of sale was, though absolute in form, only made in trust to secure certain amounts paid by Cuney for Dupree, and that the reasonable hire of the slaves had more than discharged said amounts.

Plaintiff in error asked the Court to charge the jury, "that if they believe from the testimony that Dupree and wife conveyed said negroes to Cuney to the intent and purpose to delay, hinder or defraud their creditors, they will find for the defendant."  Which the Court refused to give, for the reason, as it is presumed, that there was no such issue made by the pleadings.  To the allegations of the petition, averring that the bill of sale was made in trust to secure money, Cuney, the

defendant below, answered as follows : "For answer, he wholly denies the matters and things mentioned in plaintiff's petition, except that which is hereafter admitted."

"The defendant further says, that he did in good faith and for valuable consideration, to-wit : the sum of four thousand five hundred dollars, purchase absolutely the slaves mentioned in plaintiff's petition and paid the same," &c.

From this mode of pleading Cuney proposed to show that it was not a trust, by showing that it was, as it purported to be, an absolute sale made in good faith and on valuable consideration paid.   He does not deny all the facts in the petition, but only such as are inconsistent with the sale being absolute, in good faith, and upon valuable consideration.

Can he then be allowed to show that the bill of sale was absolute and binding for exactly the opposite reason, that it was not made in good faith ?   That would pervert the very object of pleading, which is to give notice of what the party relies on in the maintenance of his rights.   Had there been an unqualified denial of the facts in the petition, this point would present more difficulty.   In the case of Griffin v. Chubb, (7 Tex. R. 613,) it is said that "when it is proposed to disprove the plaintiff's case, by proving independent facts from which the conclusion adverse to the plaintiff is to be deduced inferentially, it may in general be necessary for the defendant to plead specially such independent facts."

Here the fact to be disproved is, that the sale was on trust to secure money.   The mode of disproving that, or of defeating its validity, as contemplated in the charge asked, is by showing an additional fact—the fraudulent intent, as to creditors, with which the sale was made—by which additional and independent fact the sale, though intended as a trust, became absolute in legal effect.   We think the Court properly refused the charge.

Another important question arises upon the evidence, which

is whether or not the trust, being verbal, was established with sufficient clearness and certainty.

For the greater security of property, our law requires contracts for the sale of lands and slaves to be made in writing. (Hart. Dig., Art. 1451.) It has been held that, although reduced to writing, a verbal trust may be shown to have been annexed to the contract. To be enforced, however, a rule of equity requires that it shall be established with clearness and certainty. Otherwise men would have no security that contracts would stand after they had been reduced to writing with the greatest consideration and solemnity. So guarded have the rules been on this subject, that such verbal trust will not be held to have been clearly and certainly established by the direct testimony of one witness, swearing to the admissions of the alleged trustee, unless his testimony be confirmed by corroborating circumstances. (Miller v. Thatcher, 9 Tex. R. 482 ; Mead v. Randolph, 8 Tex. R. 191; McClenny v. Floyd, 10 Tex. R. 159.)

One witness, John N. Dupree, brother of the deceased, swore that a few weeks after his brother's death, Cuney admitted to him that he had not paid for the negroes, that he had them on hire, and that after they worked out what he had advanced and was bound for, he would obligate himself to return the negroes to the children of L. G. Dupree.

In corroboration of this, it was shown by the depositions of Bradbury that Cuney did not pay the consideration as alleged in the bill of sale, but that after calculating certain debts that Cuney agreed to pay or had paid, he gave to Dupree his draft for the balance. It is very certain, however, that though this seemed at the time of the sale to this witness, who drew up the papers, to be the true nature of the transaction, it was not ; for Cuney in making out his account in his amended answer, showing the items of payment by which the sum of four thousand five hundred dollars was made up, does not insert or refer to this draft. The same witness says that he

made out a list of the debts to be paid by Cuney before draw-
ing the draft for the balance of the price    It is also clear that
that list of debts was not the consideration, for Cuney shows
that in order to make out the debts amounting to the price of
the negroes he includes the burial expenses of Dupree and his
wife, and the expenses of their son John at school a year or
two afterwards.   Of course these could not have been placed
in the list by the witness Bradbury.   The fact then that we
find Cuney paying amounts for Dupree and his family, that
could not have been anticipated at the time of the trade, and
claiming those amounts to have been paid as part of the pur-
chase money of the negroes, is a strong corroboration of his
admission that the sale was a trust, and was not what it pur-
ports to be, an absolute sale with a consideration already paid.
There are other minor matters tending in the same direction.
This conclusion too is much favored by its reasonableness.
That a man having this much property, easily convertable into
cash, should mortgage it to relieve himself from debts not
near equal in amount to the value of the property, is very rea-
sonable.   That he should sell it upon an indefinite credit, for
an amount not more than equal to its fair value, and allow the
purchaser to have his own time in lifting debts contracted and
to be contracted, and thereby waste it all away, is a transac-
tion out of the usual course of things entirely, and so much
counter to common experience as not readily to be credited.

The true criterion in this case is not alone, has the trust
been established by a particular amount of testimony, to-wit:
admissions proved by one witness and corroborating circum-
stances ; but also does this amount of evidence, after being
adduced, make it reasonably clear and certain that the verbal
trust was made as alleged.   We think that it does.

Judgment affirmed.