Thompson v. Berry.

## B. J. THOMPSON AND ANOTHER V. JOHN W. BERRY.

A citizen of another State, who is sued for property in the State of his residence, causes it to be removed to this State during the pendency of the suit, and seeks to invoke the statute of limitations of this State against an apparently just demand: *Held*, that although the case is not within the letter of the Act of 1852, it is fully within its spirit; and that a suit for the property is maintainable in this State if brought within twelve months after its removal to this State, unless the cause of action was barred by limitation in the State from which it was removed.

See this case for a review of the case of Snoddy v. Cage, (5th Texas R., 106,) in which it was decided by this court that where a debt was contracted in another country by a person who afterwards removed to this State, our statute of limitations of 1841 was not suspended until his arrival, but ran against the action from the time of the accrual thereof; — *held*, that although this may have been a sound interpretation of that act, yet the 4th section of the Act of the 16th of February, 1852, introduced a new rule.

APPEAL from McLennan. Tried below before the Hon. N. W. Battle.

The facts of this case, so far as they have relevancy to the opinion, are fully stated therein. Many questions were raised in the assignment of errors and in argument, of which the court takes no cognizance.

*M. D. Herring*, for appellants.

*Sam. Black*, for appellees.

BELL, J. This suit was instituted in the District Court for McLennan county, by the appellee, John W. Berry, on the 2d day of June, A. D. 1856, to recover certain negro slaves from the possession of one Burwell J. Thompson.

Burwell J. Thompson filed his answer to the petition, claiming the slaves as his own property. He alleged in his answer that the slaves in controversy were the separate property of Milly Berry, (the mother of the plaintiff below,) in the State (then Territory) of Arkansas, as early as the year 1830; that in the year 1831,

the said Milly Berry removed with the said slaves into the State of Coahuila and Texas ; that by the laws of Coahuila and Texas, the said slaves became, or were about to become, free; that in the year 1832 or 1833, the said Milly Berry smuggled the negroes into the State of Louisiana, where they were seized as " contraband ;" and that about the time of their seizure, the said Milly Berry executed a bill of sale of all of said slaves, and delivered them into the possession of him, the said Burwell J. Thompson, and that he had ever since owned the said slaves, and held continuous, peaceable and adverse possession of them. On the 21st of October, A. D. 1857, the plaintiff below amended his petition, alleging that in the year 1855, and for many years previous thereto, the negroes in controversy were in the possession of one John H. Thompson, in the State of Louisiana. He alleged John H. Thompson to be a transient person. He stated further, that about the 27th day of February, A. D. 1855, he instituted suit against the said John H. Thompson, in the District Court for the parish of Sabine, in said State of Louisiana, for the recovery of said negroes, and sued out a writ of sequestration for the purpose of sequestering them to await the determination of the suit ; and that the sheriff was prevented from serving the said writ of sequestration by the fraudulent acts of the said John H. Thompson. He alleged that the said John H. Thompson concealed the said negroes, and caused them to be brought into the State of Texas, and delivered into the possession of the defendant, Burwell J. Thompson ; and he charged that John H. Thompson and Burwell J. Thompson were combining to defraud him, &c. He asked that John H. Thompson might be made a party defendant to the suit. Citation was issued to John H. Thompson, and was served on him on the 22d of October, 1857. On the 19th of March, A. D. 1858, the said John H. Thompson filed what he styled his plea of intervention, in which (amongst other things) he alleged that John Berry, the father of the plaintiff, on the 17th of June, 1830, in the then Territory of Arkansas, entered into a marriage contract with Milly Wilborne, the mother of the plaintiff, whereby he conveyed to the said Milly the slaves in controversy and others; that John Berry and Milly Wilborne married, and that the negroes became the separate pro-

perty of the said Milly; that John Berry died, and the said Milly being then a *feme sole*, conveyed the said negroes to him, the said John H. Thompson, on the 23d of February, A. D. 1833; that he had possession of the said slaves so conveyed to him by Milly Berry in the State of Louisiana for many years; and that he caused them to be brought, openly and without any conceal- ment to Texas, and placed in the possession of his agent, Burwell J. Thompson.

On the same 19th of March, A. D. 1858, Burwell J. Thomp- son, the original defendant, filed an amended answer, in which he alleged that so much of his former answer as set up title in himself to the negroes in controversy, was filed by mistake; that the negroes belonged to John H. Thompson, and that he held them as agent for the said John H. Thompson. The defendants in the court below relied upon the statute of limitations of this State, and upon the prescription growing out of twenty years possession in the State of Louisiana.

The plaintiff in the court below proved that he was the only child of John Berry and his wife Milly Berry; that the negroes in controversy were the separate property of his father, John Berry; that his father, John Berry, died sometime in the year 1833; that his mother, Milly, died in the year 1840. There was some diversity in the testimony as to the time of the birth of the plaintiff, John W. Berry; but the evidence seems to establish that he was born in the town of Nacogdoches, in the month of February, A. D. 1832, though the fact is not material to the present suit, in the view we take of the case.

It was shown upon the trial that the plaintiff instituted his suit in Sabine parish, in the State of Louisiana, in February, 1855, against John H. Thompson, for the recovery of the slaves in con- troversy; that a writ of sequestration was issued and was returned by the sheriff without being served, the sheriff stating in his return that the negroes could not be found; and further, that the Louisiana suit was dismissed in November, 1856, for want of prosecution by the plaintiff.

Upon the trial the defendant, John H. Thompson, introduced in

evidence what purported to be the last will and testament of John Berry, the father of the plaintiff in the court below. This will appears to have been admitted to probate by the alcalde of Nacogdoches, on the 10th of August, A. D. 1833. In the copy of the will contained in the transcript before us, it purports to have been executed on the 27th day of December, A. D. eighteen hundred and thirty, which, if the instrument be genuine, must be a mistake. This will "bequeaths and donates" all the testator's personal and real estate to his wife Milly and his son John W. Berry, "being equally divided between them." After naming two persons, the "true and trusty friends" of the testator, to divide his estate between his wife and son, the will uses these words: "giving to them their equal parts, likewise their heirs or assigns; and if either of the above mentioned, Milly Berry or John W. Berry, should die, the whole of said estate shall fall to the surviving one." This will was introduced in evidence by the defendant, John H. Thompson, for the purpose of deducing from it the conclusion that one half of the testator's property vested absolutely in Milly Berry, by virtue of the will, and that her conveyance of the negroes to him was therefore valid. We do not propose to discuss the question how far the court below was bound to notice this will in the state of the pleadings, introduced, as it was, without any notice, and without any explanation of what had been done in pursuance of it, and after the defendant had averred that Milly Berry became possessed of the negroes in controversy by virtue of a marriage contract. The least that can be said, by way of disposing of any claim of the appellant by virtue of this will, is, that it was in contravention of law at the time it was made and probated; that it could only be valid, at the most, for the testator's disposable portion, which, as he left a son, was one-fifth; and that any one claiming property through Mrs. Berry under it, must show that the property so claimed was no more than the testator's disposable portion. This is not shown in this case. There is no acquiescence in the will by the son, John W. Berry, shown, if any could be shown, that would be binding on him. We therefore leave the will out of our further consideration, and come to the main ques-

tion in the case.    This question arises upon the proper construction of the 4th section of the Act of the 16th of February, 1852, Oldham & White's Digest, art. 1360.

The court below instructed the jury upon the point in question as follows : " That the possession of the agent is the possession of the principal; and if the jury believe from the evidence that J. H. Thompson removed said negroes from the State of Louisiana, where he resided, to his agent, B. J. Thompson, in this State, and with a view to avoid their seizure under a writ of sequestration and defeat the suit which had been instituted in the State of Louisiana for the recovery of said negroes; and if the jury further believe that the period of five years after plaintiff's majority had not barred his right of action and recovery in said State of Louisiana at the time of their removal as aforesaid to this State, then the court charges that this cause comes within the purview of the 4th section of the Act of 1852, and the plaintiff is entitled to maintain this suit for the recovery of said negroes, provided the evidence shows that it was instituted within twelve months after they were brought into this State and delivered into the hands of J. H. Thompson's agent."

The 4th section of the Act of 1852 is in the following words : " No demand against any person who shall hereafter remove to this State, incurred prior to his removal, shall be barred by the statute of limitations of this State, until he shall have resided in this State for the space of twelve months; provided, that nothing in this section shall be construed to affect the 13th section of an Act of limitation, approved February 5th, 1841." The 13th section of the Act of 1841, which is referred to in the section above quoted, provides that "no action shall be brought against any emigrant of the Republic to recover a claim which was barred by the law of limitations of that country or State from which he emigrated," &c.    It was therefore proper that the court should qualify the instruction given to the jury by telling them that it must appear that the demand in question was not barred by the law of limitation of the State of Louisiana.

In the case of Snoddy v. Cage, 5th Tex., 106, this court decided, (the present chief justice dissenting,) that where a debt was

contracted in another country by a person who afterwards removed to this State, our statute of limitations of 1841 was not suspended until his arrival, but ran against the action from the time of the accrual threof. This may have been a sound interpretation of the Act of 1841, but the 4th section of the Act of 1852 was obviously intended to introduce a new rule. And there is also a plain distinction between the facts of this case and the case of Snoddy v. Cage. In the last named case, the party who invoked the protection of the statute had become a resident of the State, and the court was much influenced by the well known policy of the congress of the Republic in enacting the law of 1841, to protect emigrants from suits upon demands originating in other countries or States. In the present case, a citizen of another State who is sued for property in the State of his residence, causes it to be removed to this State during the pendency of the suit, and seeks to invoke our statute of limitations against what appears to be the just demand of his adversary. Although the case is not within the letter of the Act of 1852, we think it is fully within its spirit; and if a party who removes to this State is subject to be sued within twelve months after his removal, *a fortiori*, one who seeks to escape another jurisdiction by the fraudulent removal of property to this State during the pendency of a suit for that property in another State, shall be in no better condition.

It was contended in the court below, and is urged here, that the appellee is estopped by the allegation in his petition that the negroes came into the possession of Burwell J. Thompson on the 1st of March, A. D. 1855, from showing the contrary; and that this suit having been instituted on the 2d day of June, A. D. 1856, is not within the saving of the 4th section of the Act of 1852. The allegation in the plaintiff's petition, that the negroes came into the possession, or were in the possession of Burwell J. Thompson on the 1st of March, A. D. 1855, was a general allegation, which must be held to be controlled by the subsequent allegation contained in an amended petition, to the effect that the suit was instituted within twelve months after the removal of the negroes to this State. We think that the plaintiff below, under the pleadings, was entitled to prove, and did prove, that the

Thompson v. Borry.

negroes came into the possession of Burwell J. Thompson within twelve months next before the institution of this suit.

There are several points presented by the record, and argued by counsel, which we do not deem it necessary to discuss, inasmuch as we are of opinion that the real merits of the case lie within the compass to which this opinion is confined, and that there is no error in the judgment for which it ought to be reversed.

There has been filed in this court a release by the appellee of the estate of Burwell J. Thompson, except so far as the appellee recovered judgment against the said Burwell J. Thompson for hire of the negroes in controversy, and also a release of the estate of David Blankenship, and of Mortimer Donaho, and also other sureties. This release appears to have been brought into this court by the appellant, and we are not informed that the counsel for the appellee have notice of it. We are therefore inclined to affirm the judgment of the court below, leaving the parties claiming the benefit of the release to make it effectual hereafter.

The judgment of the court below is affirmed.

Judgment affirmed.

MOORE, J., did not sit in this case.