**CARL et al. v. SETTEGAST et al.***
(No. 220—3350.)

(Commission of Appeals of Texas, Section B.
Jan. 22, 1922.)

1. Trial ⊙═237(6) —Instruction on burden of proof in action to ingraft trust on deed absolute in form error.

In action to ingraft a parol trust on a deed absolute in form, an instruction that plaintiff must establish the trust "clearly" and by a preponderance of the evidence, and the burden of proof was on her to show by a preponderance of evidence and to establish "clearly and to the satisfaction of the jury" that the deed was given for some purpose other than that expressed on its face and by its language, was error.

2. Limitation of actions ⊙═73(1)—Coverture tolls statute.

Under Rev. St. art. 5708, repudiation of a trust would not start running of limitations against the cestui, if she was then married.

3. Limitation of actions ⊙═39(12)—Action held for the recovery of real estate, and the four-year statute did not apply.

An action to ingraft a parol trust on a deed absolute on its face, in so far as the property was real estate, was governed by Rev. St. 1911, arts. 5672–5684, and article 5690, providing that every action other than for the recovery of real estate should be brought within four years, did not apply.

4. Husband and wife ⊙═138(7)—Notice to husband not notice to wife, unless acting as her agent.

Notice to the husband is not notice to the wife, unless he is acting as her agent.

Error to Court of Civil Appeals of Ninth Supreme Judicial District.

Action by Adelina Carl and another against J. J. Settegast, Jr., and others. Judgment for defendants affirmed by the Court of Civil Appeals (211 S. W. 506), and plaintiffs bring error. Judgments of both courts reversed and remanded for new trial.

Geo. S. King and Jno. C. Williams, both of Houston, for plaintiffs in error.

C. R. Wharton, J. W. Lockett, and Baker, Botts, Parker & Garwood, all of Houston, for defendants in error.

McCLENDON, P. J. The purpose of this suit was to ingraft a secret parol trust upon a deed absolute in terms, by which on May 18, 1882, Adelina Carl (who was then Adelina Binz) conveyed to her father Jacob Binz her interest in certain real estate therein specified, and all her interest in the community estate of her father and her mother, Anna Binz. The suit was brought by Adelina Carl, joined by her husband, F. Carl, against Mrs. Melina Settegast and husband, J. J. Settegast, and Arthur J. Binz. Mrs. Settegast and Arthur J. Binz were children of Jacob Binz by a subsequent marriage and devisees under his

will. The property sought to be affected with the trust was described in plaintiff's petition, and consisted of both personalty and realty. Plaintiff sued for title to and possession of one-fourth undivided interest in the property, and for partition. Stated in general terms, the contention upon which plaintiff's suit was predicated was that when the deed of settlement of May 18, 1882, was executed, the understanding between her and her father was that her interest in her mother's community estate was thereby conveyed to her father, not absolutely, but in trust for her, with the understanding that her father was to control and manage it during his life, and at his death she was to receive her interest, with the accumulations. The cause was tried before a jury upon special issues, and upon their answers judgment was rendered for defendants. This judgment was affirmed by the Court of Civil Appeals, 211 S. W. 506.

Forty-two special issues were submitted to the jury, not all of which, however, were answered. The Court of Civil Appeals rests its affirmance of the trial court's judgment upon two independent jury findings: First, the finding in answer to special issues 1 and 2 to the effect that the alleged trust agreement was never made; and, second, the finding in answer to special issue 11 to the effect that, if the agreement had been made, the general course of dealing with the property by Jacob Binz for a period of more than four years prior to his death showed a repudiation of such trust, and therefore the rights of plaintiff, if they ever existed, were barred by the four-year statute of limitations (R. S. art. 5690). The correctness of these holdings presents two questions of leading importance for our determination: First, whether defendants' special charge No. 4, which the court gave, was erroneous in the burden of proof it required of plaintiff in establishing the parol trust; and, if erroneous, second, whether the trial court's judgment must be affirmed, regardless of such error, upon the holding that the action was barred under the jury's answer to special issue 11.

The evidence was sufficient to take the case to a jury upon the issue of the creation of the trust; and since we are concerned here only with questions of law, and must view the evidence, for the purpose of determining those questions, in the strongest light in favor of the plaintiff the losing party, we will give only such brief outline of the case as we deem necessary to make clear the questions which we are called upon to decide. A more detailed statement of the evidence will be found in the opinion of the Court of Civil Appeals.

Anna Binz, the mother of plaintiff, died in 1870, intestate. She left surviving her as the only heirs at law of her community es-

tate two children, the plaintiff and Adolph Ulrich, a son by a former marriage. Anna and Jacob Binz had lived together as man and wife in Houston, Tex., since about 1861. At the time of her death, Jacob Bintz had accumulated considerable property, all of which was presumably community, and most of which was real estate, all purchased for cash. In 1873 he married again, and by this marriage there were two children, the defendants Mrs. Melina Settegast and Arthur J. Binz. The second Mrs. Binz died in 1901. From 1870 to 1882 Jacob Binz managed and controlled the community property of himself and wife, Anna Binz, handling it practically as his own property. On May 18, 1882, plaintiff's twenty-second birthday, she executed to her father a deed absolute in form, conveying "all my right, title and interest to which I may be entitled as heir of my deceased mother" in certain specified real estate, which constituted all the real property standing in her father's name. The recited consideration for this deed was:

"Four thousand dollars to me in hand paid by Jacob Binz, and the further consideration of life insurance policy No. 60421, in the New York Life Insurance Company for ten thousand dollars."

The habendum clause concluded as follows:

"This deed being intended as and is a full release and conveyance to said Jacob Binz of all my right, title and interest and claim as heir of my deceased mother, Anna Binz, in the community property or estate of my deceased mother in full satisfaction, discharge and release of any and all claims and demands that I may or can have against said Jacob Binz by, through or on account of said community interest, or as heir of my deceased mother."

On August 21st of the same year plaintiff married August Moser, who died about 16 years later. On October 10, 1902, she married F. Carl, with whom she has since lived. After this deed of settlement was made, and up to the time of his death, Jacob Binz continued to manage the property conveyed therein as his own, assessing it for taxes, making sales of real estate, purchasing other real estate, loaning money, etc. He died March 23, 1913, at the age of 85 years. His estate was appraised at $873,213.78.

The evidence by which plaintiff sought to establish a parol trust was her own testimony as to the agreement between her and her father when the deed of settlement was executed, corroborated by several witnesses, who testified to various subsequent declarations of trust by Jacob Binz in their hearing. The evidence of plaintiff was sufficient to warrant a finding that the trust agreement was made, and that under it Jacob Binz had the absolute management and control of plaintiff's community interest in her mother's estate during his lifetime, including the power of sale.

[1] The first special issue submitted to the jury called for a finding upon the question whether the trust agreement was made; the court having already instructed the jury in its main charge that the deed was presumed to be an absolute conveyance. Defendants' special charge No. 4 reads as follows:

"The jury is instructed that before the plaintiff can recover herein she must establish clearly and by a preponderance of the evidence the alleged secret parol trust which she now seeks to ingraft upon the deed made by her to her father May 18, 1882, and the burden of proof is upon her to show by a preponderance of the evidence, and to establish clearly to the satisfaction of the jury, that the deed above referred to was given for some purpose other than the purpose expressed upon its face and by its language. And unless the jury finds from a preponderance of the evidence that the proof offered meets these legal requirements, question No. 1 should be answered in the negative."

The leading inquiry presented for our consideration is whether it was error to charge the jury, in effect, that to overcome the presumption that the deed of settlement was not absolute, as upon its face it appeared to be, but was affected with a parol secret trust in favor of plaintiff, the latter must establish such trust clearly and to the satisfaction of the jury. The character of charge to be given to the jury in a case of this character has been considered by the Supreme Court in a number of cases extending back to the earliest times; and it may be regarded as singular that the question now before us should, at this time, present any serious ground of controversy. The rule that to ingraft a parol trust upon an instrument absolute on its face the evidence must be clear and satisfactory arose at a time when suits of this nature were cognizable only in courts of chancery, where all matters of fact, as well as the law, were tried by the chancellor, and where questions of facts addressed themselves to the conscience of the chancellor. The aid of a jury in such cases was discretionary, and their findings, when called for such aid, were not binding absolutely upon the chancellor, but merely persuasive and advisory, and subject to be disregarded at his discretion. In so far as the rules of evidence thus announced by the chancery courts are rules of law, they should be regarded as binding upon our courts; but, in so far as these rules merely address themselves to the conscience of the chancellor in exercising his province to pass upon the facts or weight of the evidence, they have no place in our jurisprudence, under which, whether the case be one cognizable alone in equity or one at law, a jury trial is given as a matter of right, and the province of the jury where the evidence is sufficient to have the issues submitted to them is absolute in determining the facts, subject only to review by the trial

court and Court of Civil Appeals. In passing upon the sufficiency of the evidence as a matter of law it is the province, not only of the trial court and Court of Civil Appeals, but also of the Supreme Court, to determine whether the evidence meets the requirements under the rules of law as to the quantum of proof necessary in the particular character of case. It has been ruled that the evidence establishing a secret parol trust must be clear and satisfactory, and it may be conceded that this is a rule or standard by which the evidence is to be measured as a matter of law. We had this question for consideration in the recent case of Briscoe v. Bright, 231 S. W. 1082, from the opinion in which case we quote:

"The sufficiency of proof to meet the requirement that it should clearly and satisfactorily establish a contract which the courts can enforce is presented here only as a question of law. Conceding for the purposes of this case that the contract sought to be enforced falls within the rule requiring that its terms be proved clearly and satisfactorily and treating the question as one of law only, the evidence must be viewed most strongly in support of the trial court's judgment. The fact that the witnesses who testified may not have been disinterested, or may have made conflicting statements, or that their credibility may have been attacked, are matters with which it is not our province to deal. As we understand the rule contended for, it is not violated by objections to the evidence of this character. It only requires that the terms of the contract essential to recovery be supported by evidence sufficiently clear for the court to determine what those terms were without resorting to inference or conjecture. In this, as in every other class of cases that we now recall, the credibility of the witnesses and the weight to be given to their testimony are questions solely within the province of the jury, subject, however, to be revised by the trial judge and the Court of Civil Appeals."

As stated above, the question of the propriety of the charge under discussion has been a matter of frequent consideration by our Supreme Court from the earliest times. The Court of Civil Appeals has given a very elaborate and painstaking review of those decisions. A further review of them, in our judgment, would lead to no useful purpose. The decisions prior to the case of Howard v. Zimpelman, 14 S. W. 59, were characterized by Judge Gaines in that opinion as leaving the Supreme Court "at sea." It is contended by defendants, and was held by the Court of Civil Appeals, that that case does not hold the particular charge in question as being improper or erroneous. If this be the correct view of that decision, then the matter is still in doubt. We think, however, that it was the intention of the Supreme Court in that case to lay down a rule for the guidance of the trial court as to the proper charge to be given in a case of this character, and the clear inference to be drawn from the de-

cision is that a charge which requires any substantially different burden of proof than that provided in the direction of the court in that opinion is erroneous. Since we view the Zimpelman Case as controlling in the present case, we quote the following from that opinion:

"It is also assigned that the court erred in charging the jury that 'The burden of proof is on the defendants to establish clearly and with certainty, by a preponderance of evidence, their claim that these papers were given for some purpose other than the purpose expressed on their face by their language, which shows them absolute deeds.' The propriety of giving a charge of this character has been a matter of frequent consideration with us, and the question is one which we have found it difficult to answer. The proposition that, in order to ingraft a parol trust upon a written instrument, it must be proved with clearness and certainty, was announced in this court at an early day, and has since been substantially reiterated in very numerous decisions. Neil v. Keese, 5 Tex. 30; Mead v. Randolph, 8 Tex. 191; Cuney v. Duprey, 21 Tex. 211; Grooms v. Rust, 27 Tex. 231; Moreland v. Barnhart, 44 Tex. 275; Dean v. Lyons, 47 Tex. 18; Hughes v. Delaney, 44 Tex. 529; Markham v. Carothers, 47 Tex. 32; Association v. Brewster, 51 Tex. 257. The propriety, however, of instructing the jury that the trust must be proved with clearness and certainty has never been distinctly recognized, except in the case of Markham v. Carothers, supra. In that case, however, it was held that it was error to charge that the truth must be proved beyond a reasonable doubt, rather, however, because it was misleading than that it was incorrect as a proposition of law. In Neyland v. Bendy, 69 Tex. 713, 7 S. W. Rep. 497, it was held that a charge that the clearest and most positive proof was necessary was improper. In Prather v. Wilkens, 68 Tex. 187, 4 S. W. Rep. 252, it was decided that a charge that more than a preponderance of evidence was erroneous, but the question then was whether a certain instrument was intended as a conditional sale or a mortgage. In Miller v. Yturria, 69 Tex. 549, 7 S. W. Rep. 206, the correctness of the proposition as a rule of equity was recognized, but the propriety of giving it in charge to a jury was questioned. In Torrey v. Cameron, 73 Tex. 583, 11 S. W. Rep. 840, it was held error to charge that, 'When separate property (of the wife) has undergone mutations and changes, it is indispensable to maintain its separate character, that it be clearly and indisputably traced and identified.' It was deemed proper to instruct the jury that the property be clearly traced, but erroneous to charge them that the mutations need not be indisputably proved. These decisions leave us at sea. It is against the policy of the law that a written instrument should be shown by parol testimony to have an effect different from that which its terms import, except upon very strong proof; but we are of opinion that to tell a jury a parol trust must be proved with certainty is calculated to mislead. 'Certainty' means 'the absence of doubt,' and the effect of such an instruction is to tell the jury that it must be proved beyond any doubt. Such a quantum

of proof is not required in any case. In a case like the present, it would be proper to instruct the jury as to the legal effect of the conveyance and that the parties to it are presumed in the first place to have intended that it should have that effect, but that they should find that a trust was intended provided the other evidence be sufficient to overcome that presumption, and to reasonably satisfy them that such was in fact the intention."

The opinion in that case does not expressly hold that the giving of the charge constituted reversible error; still the opinion constituted a direction to the district court upon a further trial of that case, for which purpose it was remanded. Therefore the expression of view by the Supreme Court as to the character of charge to be given was before the court as a matter of practical importance in that case; and while it may be plausibly argued that the Supreme Court was not willing to hold that it was reversible error to give the charge, nevertheless the opinion is authoritative upon the proposition that the charge was improper, and in the rules announced as to the proper charge to be given upon a new trial of that case.

The further contention is made that the Supreme Court in that opinion only questioned the propriety of the use of the expression "with certainty," which does not appear in the charge we are considering. Without entering into a discussion of the meaning of the expression "clearly and to the satisfaction of the jury," we believe the use of those words, or, in any event, the words "to the satisfaction of the jury," without qualification is equally objectionable to the words "with certainty." At least in some senses the expressions are synonymous.

The views expressed in the above quotation from Howard v. Zimpelman have been approved in the following, among other, subsequent cases; Baylor v. Hopf, 81 Tex. 637, 17 S. W. 230; Mitchell v. Mitchell, 80 Tex. 101, 15 S. W. 705; Wallace v. Berry, 83 Tex. 328, 18 S. W. 595; Smith v. Eastham (Civ. App.) 56 S. W. 219; Land Co. v. Pace, 23 Tex. Civ. App. 222, 56 S. W. 377. We think a careful study of these cases will lead to the conclusion that we are giving the correct interpretation to Howard v. Zimpelman, in holding that the giving of the special charge constituted reversible error. To hold otherwise we think it would be necessary to overrule these cases.

[2] It therefore becomes necessary for us to pass upon the further question whether, regardless of the error in special charge No. 4, the judgment must be sustained upon the affirmative answer of the jury to special issue No. 11. That issue reads as follows:

"Do you believe from the facts and circumstances in evidence that the general course of conduct of Jacob Binz was sufficient to show a repudiation of the alleged trust, if one existed, and notice thereof to the plaintiff Ade-

237 S.W.—16

lina Carl, or her husband, Fred Carl, or her former husband, August Moser, for four years or more before the death of Binz."

We have reached the conclusion that the objections urged against this special issue, based upon the following propositions, are well founded and should be sustained.

"First. If there were no repudiation of the trust until after plaintiff's second marriage in 1902 (a fact which an affirmative answer to the issue does not preclude), then plaintiff's suit, in so far as it may be governed by the four-year statute of limitations (R. S. 1911, art. 5690), would not be barred. Her coverture in that event would prevent the running of the statute.

"Second. In so far as the property sued for was real estate, the four-year statute did not apply; but the suit was governed exclusively by the provisions of chapter 1 of title 87 (R. S. 1911), entitled 'Limitation of Actions for Lands.'

"Third. Knowledge or notice of repudiation acquired by plaintiff's husband would not be imputed to her, unless, at the time he acquired such knowledge or notice he was acting as her duly authorized agent in the matter of the trust property. The issue is erroneous, in that it authorizes an affirmative answer upon a finding that either husband of plaintiff acquired such notice, regardless of his agency."

A brief reference to the authorities supporting these propositions, we think, will suffice.

Upon the first proposition we hardly see how any controversy could arise, in view of the express language of R. S. 1911, art. 5708, which provides that—

"If a person entitled to bring any action other than those mentioned in chapter one of this title be at the time the cause of action accrues * * * a married woman * * * the time of such disability shall not be deemed a portion of the time limited for the commencement of the action; and such person shall have the same time after the removal of his disability that is allowed to others by the provisions of this title."

If authority be needed to support this construction of that article, the case of Harry v. Hamilton (Civ. App.) 154 S. W. 637, may be cited as directly in point. A writ of error was denied in that case.

[3] The correctness of the second proposition depends upon the proper answer to the question whether plaintiff's suit, in so far as the property involved was real estate, was an action "for the recovery of real estate," within the meaning of the four-year statute of limitations (article 5690), which reads:

"Every action other than for the recovery of real estate, for which no limitation is otherwise prescribed, shall be brought within four years next after the right to bring the same shall have accrued, and not afterward."

It is now well settled upon authority in this state that the test whether an action be

one to recover real estate, within the express exception to this article, is whether the title asserted by plaintiff, whether legal or equitable, will support an action in trespass to try title. In determining this question the mere form in which the action is brought is not material. The authorities relied upon by defendants are those the facts of which bring them within the principles announced in McCampbell v. Durst, 15 Tex. Civ. App. 522, 40 S. W. 315, in which Judge Williams very ably discusses the question here presented. It is there pointed out that, if, to show title in the land sued for, the plaintiff must first invoke the equitable powers of the court to set aside or reform some deed or other written instrument or judgment, not absolutely void as to the plaintiff, the action is not one to recover real estate within the terms of the exception to the four-year statute. On the other hand, it has been repeatedly held that where plaintiff's action rests upon an equitable title, to assert which does not require the aid of a court of equity to remove the impediment to such title caused by some written instrument or judgment, the action is one for the recovery of real estate, and the four-year statute of limitations does not apply. This doctrine is established by the following cases: Stafford v. Stafford, 96 Tex. 106, 70 S. W. 75; Gilmore v. O'Neil, 107 Tex. 18, 173 S. W. 203; Home Co. v. Strange, 109 Tex. 342, 195 S. W. 849, 204 S. W. 314, 207 S. W. 307; Rutherford v. Carr, 99 Tex. 101, 87 S. W. 815; Bell County v. Felts (Civ. App.) 120 S. W. 1065.

The Stafford Case presents a very close analogy to the case at bar. That was a suit by the defendant in execution to recover from the purchaser land purchased at execution sale under an alleged agreement that the purchase was to be made for the use of the defendant in execution. The decision of the court is embraced in the following quotations:

"It is not necessary for us to determine whether the facts constitute a mortgage or a trust, because if it be a mortgage, the title was in B. F. Stafford, and upon that he could maintain this action. If it were held that the transaction constituted a trust in R. E. Stafford, then B. F. Stafford was the beneficiary of that trust and held the equitable title to the land which upon the tender of the sum due became absolute, and he could institute this action to recover the land without previous suit to declare the existence of the trust. Easterling v. Blythe, 7 Texas, 210; Miller v. Alexander, 8 Texas, 36; Secrest v. Jones, 21 Texas, 121; Martin v. Parker, 26 Texas, 264; Gibbons v. Bell, 45 Texas, 423; Burdett v. Haley, 51 Texas, 540."

"There can be no question that the equitable title to this land was in B. F. Stafford under the allegation of his petition, and he could maintain such action for the recovery of the land as might have been maintained if he had the complete legal and equitable title. The

fact that he set out the facts which constituted his cause of action does not change the character of the suit; it is as much an action for the recovery of real estate as if it had been in the form of trespass to try title."

The distinction between the two characters of actions under discussion is very clearly and accurately drawn by Judge Fisher in Bell County v. Felts, supra:

"The court, under the doctrine of McCampbell v. Durst, 15 Tex. Civ. App. 522, 40 S. W. 315, and other similar cases, held that the four years' statutes of limitation applied. This is a mistaken view of this question and an erroneous application of the law. This is not a case, like those referred to, where the purpose was to cancel or remove the legal title as an impediment to the right of the plaintiff to recover, but it is an action for the recovery of the land in controversy, based really upon a right growing out of a title asserted by the defendant. In this case the defendant is asserting the legal title to the property in controversy under a deed executed to him by the sheriff of Bell county. The plaintiff is not repudiating that deed, but it is merely seeking to subordinate the legal title therein conveyed to the defendant to the superior equitable title it holds on account of the fiduciary relationship existing between the two, and the circumstances under which the land was purchased and paid for. Upon this point the case is similar to Stafford v. Stafford, 96 Texas, 106, 70 S. W. 75, where the plaintiff sought to recover by ingrafting upon the legal title a trust in his favor. There it was held that the four years' statute did not apply, but that the action was one for the recovery of land, which was governed by the general statute of limitation relating to that subject. Therefore, we are of opinion that the trial court erred in holding that the plaintiff's cause of action was barred by the four years' statute of limitation.

"It is needless to refer to the fact that, in this state an action of trespass to try title may be maintained upon an equitable as well as a legal title. New York & Tex. Land Co. v. Hyland, 8 Tex. Civ. App. 606, 28 S. W. 206. A very interesting discussion of this question will also be found in Rose v. Hayden, 35 Kan. 106, 10 Pac. 554, 57 Am. Rep. 145, where the same principle is recognized and is applicable in that state, as well as here."

The judgment of the Court of Civil Appeals in that case was reversed by the Supreme Court (103 Tex. 616, 132 S. W. 123), but upon an entirely different question from that discussed in the above quotation. Upon this question the opinion is cited with approval in the Strange Case, above.

Under these decisions plaintiff's suit, in so far as the property was real estate, is governed by the provisions of chapter 1 of title 87, and the four-year statute of limitations has no applications. It was made clear, both in the pleadings and in the trial court's instructions to the jury, that plaintiff was not seeking to set aside the deed of settlement on account of fraud, duress, mistake, want or inadequacy of consideration,

or otherwise; but that her right to recovery was predicated alone upon an express parol trust agreement, to the establishment of which the deed of settlement constituted no barrier or impediment. To quote from Gilmore v. O'Neil, above:

"This is not a case where, as in Chicago, T. & N. C. Ry. Co. v. Titterington, 34 Texas, 218, 19 S. W. 472, 31 Am. St. 39, and McCampbell v. Durst, 15 Tex. Civ. App. 552, 40 S. W. 315, it was necessary, in order to establish the title, to set aside a deed which stood as an obstacle to recovery."

[4] Upon the question presented in the third proposition, few cases have adjudicated either without or within this state.

Perry on Trusts makes this unqualified assertion:

"Notice to the husband is not notice to the wife, unless he is her agent, and is engaged upon the business when he receives the notice." 5th Ed. vol. 1, p. 321.

Stephens et al. v. Herron, 99 Tex. 63, 87 S. W. 326, holds that the wife may be an innocent purchaser of real estate from her husband, unaffected by an unrecorded deed, which had been executed under a power of attorney which both she and her husband signed; she having no notice of the execution of the deed under the power.

In Allen v. Garrison, 92 Tex. 546, 50 S. W. 335, the court say:

"The opinion of the Court of Civil Appeals seems to be predicated upon the theory that since the husband acted as agent of the wife in causing the purchase of the lots for her, notice to him, whether actual or constructive, that the release had been executed would be notice to her. When we granted the writ we were not prepared to concur in the proposition as broadly stated; and we are still inclined to the same opinion. In Pringle v. Dunn, 37 Wisconsin, 468, the Supreme Court of Wisconsin say: 'It does not appear, even, that he (the husband) was acting as her agent in any legal sense; and besides, if he were, his knowledge acquired at another time, when not engaged in her business, ought not to be imputed to her. Notice, to bind the principal, should be brought home to the agent while engaged in the business or negotiation of the principal, and when it would be a breach of trust in the former not to communicate the knowledge to the latter.' See also Loan Agency v. Taylor, 88 Texas, 47; Snyder v. Sponable, 1 Hill, 567; same case, 7 Hill, 427."

The case of Cooper v. Sawyer, 31 Tex. Civ. App. 620, 73 S. W. 992 (opinion by Judge Streetman), is the only direct adjudication upon the exact question which we have found in this state. The following quotation gives the effect of the court's ruling:

"It is true that the husband is vested by law with the control and management of the wife's separate estate, but he is not, in the absence of special authority, such an agent that notice to him will constitute notice to his wife. Speer, Law of Mar. Women, § 35. To effect her with notice of the fraud by reason of his knowledge, it was necessary to have shown that he was authorized by her to act as her agent in accepting the deed of trust. There was evidence that he had assumed to act as her agent in accepting the deed of trust, but no evidence whatever that she had authorized him to do so; and the agency could not be proved by the declarations or acts of the agent which were not shown to have been known to the wife."

We think the principles applicable to this question are correctly stated in the following quotation from Speer's Law of Marital Rights in Texas (1916 Ed.) § 110, p. 150:

"The husband not being necessarily the agent of the wife, it follows that notice to him would not necessarily be notice to her. It would be such only where he was her agent, and at the time acting within the scope of his authority as such agent. While he is acting as her agent, the rule of notice to the agent as affecting the principal is applicable, but, as in other cases, the knowledge must have been acquired by him while he was engaged in the transaction of the particular business of the wife, and under such circumstances as that a failure to communicate it to her would amount to a breach of faith."

We conclude that the judgments of the district court and Court of Civil Appeals should be reversed, and the cause remanded to the former for a new trial in accordance with the views herein expressed.

CURETON, C. J. The judgment recommended in the report of the Commission of Appeals is adopted, and will be entered as the judgment of the Supreme Court.

We approve the holding of the Commission of Appeals on the question discussed in its opinion.