ESTATE OF THOMAS SELDEN REED, T. S. REED, EXECUTOR, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 18403. Promulgated February 28, 1928.

*A. S. Walker, Esq.*, for the petitioner.
*T. M. Mather, Esq.*, for the respondent.

1064

### OPINION.

Milliken : Petitioner's first contention is that since Ida Reed died within five years prior to decedent's death and since her estate was returned for estate tax and, as petitioner asserts in his brief, her estate tax was paid, all of her estate should be deducted from decedent's gross estate. We are concerned with the property which the children deeded to decedent. Section 403 (a) (2) of the Revenue Act of 1921 provides:

SEC. 403. That for the purpose of the tax the value of the net estate shall be determined—

(a) In the case of a resident, by deducting from the value of the gross estate—

\*       \*       \*       \*       \*       \*       \*

(2) An amount equal to the value of any property forming a part of the gross estate situated in the United States of any person who died within, five years prior to the death of the decedent where such property can be identified as having been received by the decedent from such prior decedent by gift, bequest, devise, or inheritance, or which can be identified as having been acquired in exchange for property so received: *Provided,* That this deduction shall be allowed only where an estate tax under this or any prior Act of Congress was paid by or on behalf of the estate of such prior decedent, and only in the amount of the value placed by the Commissioner on such property in determining the value of the gross estate of such prior decedent, and only to the extent that the value of such property is included in the decedent's gross estate and not deducted under paragraphs (1) or (3) of subdivision (a) of

this section. This deduction shall be made in case of the estates of all decedents who have died since September 8, 1916.

There is no evidence in the record to the effect that the estate tax on Ida Reed's estate has been paid nor as to what value was eventually placed upon the estate for estate-tax purposes. The vital objection, however, is that decedent did not receive the estate of Ida Reed " from such prior decedent by gift, bequest, devise or inheritance * * *." The children conveyed their interest in such estate to him by their deed of December 24, 1919. The action of respondent in this respect is approved.

Petitioner next asserts that Ida Reed's estate was not the property of decedent but that by virtue of an oral agreement between him and his children he held it in trust to manage for the benefit of the children and at his death to devise and bequeath it to them. It is to be observed that it is not contended that by such agreement a trust was imposed upon the property of decedent. The trust asserted is confined to the estate of his deceased wife. That a trust can be engrafted by parol evidence upon a deed, such as the one here involved, is recognized by the courts of Texas. See *Carl Settegast*, 237 S. W. 238, and cases cited. It is there stated that the burden rests heavily upon those who attempt to prove such a trust. We have no doubt that there was an agreement between decedent and his children, an agreement which is replete with perfect confidence and filial devotion, but the vital issue is, What was the agreement?

The deed from the children to decedent and decedent's will were executed on the same day. They constituted parts of the same transaction and are the most persuasive evidence of what the agreement was. The deed is an out-and-out conveyance of the legal title. It contains no restrictions or reservations. It shows an intention on the part of the children to vest in decedent an unfettered fee simple title to their undivided interests. The property conveyed to decedent was to be his to do with as he saw fit. There is some oral testimony in the record, which, if taken by itself, might tend to show that decedent agreed to use such property for the benefit of his children, but the record contains no evidence indicating that he managed the property in any way different from that which he possessed prior to the date of the conveyance. He appears, so far as the record shows, to have controlled and used the property conveyed as though it was absolutely his own.

That the children conveyed and intended to convey the legal title to their shares of the deceased wife's estate, without restriction, is also evidenced by the terms and wording of the will. In that instrument, which was written in his own hand, the testator makes no reference to the estate of either deceased wife, much less to the interest of Ida, as to whose share alone it is now sought to create

a trust. He speaks of "my wealth" and "the remainder of my estate at my death." He makes an elaborate explanation of the reason why the two eldest sons, who had no interest in the estate of Ida Reed, were almost wholly excluded from participation in his estate. He announces his intention to make provision for these sons "should misfortune come to either or both of them before my death causing them to lose their fortune or a large part of it before my death * * *," and in case he saw fit to make bequests to others than his children and to charity. This is not the will of one who is attempting to dispose of property held in trust but is the will of one who is disposing of property which he, the testator, might own and possess at the time of his death. It is the property which decedent might own at the time of his death which is disposed of by his will and not property which he owned at the date of its publication.

The question recurs, What, then, was the agreement between the father and his children? Looking to the deed and will and the parol evidence in the record, we are convinced that the agreement was as we have found in the findings of fact—it was to the effect that the children were to convey to decedent not the control of but the unrestricted legal title to their shares and that he in turn was to make precisely the will he did make and which has been probated. It is not claimed that decedent in any way or to the least extent failed to perform his part of the agreement. Decedent was faithful in this as it appears he was in all his dealings. While there is evidence in the record, in the shape of answers to suggestive questions, which indicates that the alleged trust related solely to the estate of Ida Reed, there is also evidence which clearly supports our conception of the agreement. Thomas S. Reed, the son who was referred to in the will, who had no interest in the estate of Ida Reed, and who has been in constant business association with his father, testified:

Q. Do you know anything about any agreement between the children of Mr. Thomas Selden Reed with reference to the estate of your mother and of your stepmother?

A. All of the children agreed to an equal distribution of it.

Q. I did not hear that.

A. All of the children agreed to an equal distribution.

Q. What do you mean by an equal distribution?

A. There were nine heirs to the joint estate of the husband and two wives. The agreement among the children was that there would be no differentiation between the first set of children and the second set of children, but the property would be divided equally among all.

Q. The effect of that would be, then, to divide the entire community property of Mrs. Ida Reed and of Mrs. Dora Reed into nine parts?

A Yes, sir.

Again, he testified:

Q. What was the agreement, again?

A. That the estate should be divided on an equal basis among all of the heirs, one-ninth to each heir, with the further provision that I was to receive the portion which would have gone to the two older sons, M. H. and D. C. Reed.

The controlling thought in this testimony is that no difference was to be made between the two sets of children except as to the two eldest sons, and that at the death of decedent the estate then owned by him was to be divided between the children in the proportions shown. Reading the parol testimony in connection with the deed, we are convinced that no trust was created or intended to be created as to Ida Reed's community property; that upon the execution of the deed Ida Reed's share in the community as well as the share of Dora became the absolute property of decedent; that the agreement related to neither of these shares but was to the effect that the estate of decedent in existence at the time of his death was to be divided between the children in the proportions shown by the will; that the agreement as made was carried out by the deed and the will, and that the whole estate devised and bequeathed was the absolute property of decedent at the time of his death. The estate so devised and bequeathed falls squarely within the provisions of section 402 (a), which provides:

SEC. 402. That the value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated—

(a) To the extent of the interest therein of the decedent at the time of his death which after his death is subject to the payment of the charges against his estate and the expenses of its administration and is subject to distribution as part of his estate.

There is no merit in petitioner's last contention. Decedent did not owe his children anything on account of their conveyance, except to make the will, which he did make. This constituted full satisfaction of the consideration for the agreement.

Reviewed by the Board.

*Judgment will be entered for the respondent.*